[No. E002372. Fourth Dist., Div. Two. Nov. 6, 1986.]

DENNIS J. IZZI et al., Plaintiffs and Respondents, v.
MESQUITE COUNTRY CLUB et al., Defendants and Appellants.

1310

## COUNSEL

Thompson & Colegate, Robert B. Swortwood and Sharon J. Waters for Defendants and Appellants.

Schlecht, Shevlin & Shoenberger and Jon A. Shoenberger for Plaintiffs and Respondents.

## OPINION

**KAUFMAN, J.**—Defendants Mesquite Country Club, James F. and Laura Temple, and Nellie Swope appeal from an order denying their petition to compel arbitration of a class action instituted by plaintiffs Dennis J. and Rhea Ann Izzi. In denying the petition the court stated: "The Court finds that the Arbitration Clause contained in the excrow [*sic*] agreement does not apply to the type of action now before the Court. [¶] Further the Court is unable to find any cases in which a class action lawsuit was ordered into arbitration. [¶] In making this decision the Court is aware of the policy favoring arbitration."

Defendants contend the court erred in finding the arbitration clause inapplicable to the action brought by plaintiffs. Defendants further argue the court erred in apparently concluding that, since the action was pleaded as a class action, it could not be subject to arbitration. In defending the court's

denial of arbitration, plaintiffs controvert defendants' contentions and further argue that the arbitration clause is unenforceable under the adhesion doctrine, that plaintiffs failed to read the arbitration clause and therefore have not knowingly consented to arbitral jurisdiction, and finally that there are in this action parties defendant who were not signatories to the agreement containing the arbitration clause and who therefore cannot properly be compelled to arbitrate.

*Facts*[1]

In September 1984, plaintiffs Dennis J. and Rhea Ann Izzi purchased a condominium in the Mesquite Country Club development in Palm Springs. In purchasing, plaintiffs signed a "Combined Deposit Receipt, Escrow Instructions and Purchase Agreement" (hereafter purchase agreement). The purchase agreement was also signed by James F. Temple, president of defendant Mesquite Country Club, Inc., and Nellie Swope, denominated in the agreement as "Sales Representative."

The purchase agreement contains the following paragraph: "12. *Attorneys' Fees, Arbitration.* In the event of any arbitration or legal action instituted between Seller and Buyer in connection with this Agreement, the prevailing party shall be entitled to recover from the losing party all of its costs and expenses, including court costs and reasonable attorney's fees. Any such dispute shall be settled by arbitration to be held at Seller's option in Orange or Riverside Counties under the American Arbitration Association rules. Any award or decision shall be final and binding, and judgment may be entered thereon in the applicable court."

In March 1985, plaintiffs filed a complaint seeking compensatory and punitive damages on allegations of fraudulent concealment, breach of statutory duty, negligence, and breach of fiduciary duty. The gravamen of the complaint is defendants' alleged failure to disclose to condominium buyers an agreement defendants had allegedly made with the City of Palm Springs to form a special assessment district for the purpose of relieving defendants ". . . of the cost of constructing certain curbs, gutters, blacktop paving, sewer lines, bike paths, sidewalks, and flood control structures within the Mesquite Country Club development and to impose the cost of said improvements upon the purchasers of condominium units within said development." Each of plaintiffs' four causes of action is based on this alleged failure to disclose. The complaint further alleges the suppression of information about the assessment district was intended by defendants to induce plaintiffs to purchase condominiums in the development.

---

[1]The facts in this matter are drawn from the complaint and documents supporting and opposing the petition to compel arbitration.

Plaintiffs filed the action as individuals and on behalf of all others similarly situated, and the complaint appears adequately to plead the necessary foundational facts to support an eventual request for class certification. Petitioners estimate the number of affected purchasers who might join the class as approximately 140 and request compensatory damages in the amount of $3,000 per plaintiff and punitive damages of $5 million against each defendant.

 Neither party reports, nor does the record indicate, that a motion for class certification was filed or heard before this appeal.[2]

### Discussion

By way of preface we observe plaintiffs' complaint sounds solely in tort. Defendants' alleged fraud in the inducement is not urged as a defense to any contract claim and no rescissory remedy is sought.

### 1. *Applicability of Arbitration Clause*

The arbitration clause at issue in this matter provides that "[*a*]*ny such dispute* shall be settled by arbitration . . . ." (Italics added.) The words "[a]ny such dispute" are obviously delimited by the language in the preceding sentence, "any . . . action instituted between Seller and Buyer *in connection with* this Agreement . . . ." (Italics added.) Defendants' petition to compel arbitration thus required the trial court to determine whether plaintiffs' tort claims for fraudulent concealment, negligence, and breach of statutory and fiduciary duties arose "in connection with" the parties' agreement for purchase and sale of the condominium.

 Arbitration is a favored method of dispute resolution and agreements to arbitrate disputes are liberally interpreted. "In California, the general rule is that arbitration should be upheld unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute. (*Pacific Inv. Co.* v. *Townsend* (1976) 58 Cal.App.3d 1, 9-10 [129 Cal.Rptr. 489].) In the particular situation where contracts provide arbitration for '"any controversy . . . arising out of or relating to the contract . . ."' the courts have held such arbitration agreements sufficiently broad to include tort, as well as contractual, liabilities so long as the tort claims 'have their roots in the relationship between the parties which

---

[2]The court's order denying defendants' motion seeking to compel arbitration is clearly appealable on an interlocutory basis. (Code Civ. Proc., § 1294, subd. (a); *Ford* v. *Shearson Lehman American Express, Inc.* (1986) 180 Cal.App.3d 1011, 1017, fn. 2 [225 Cal.Rptr. 895]; see *Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 353 [133 Cal.Rptr. 775, 84 A.L.R.3d 343].)

was created by the contract.' (*Berman* [v. *Dean Witter & Co., Inc.* (1975)] 44 Cal.App.3d [999,] 1003 [119 Cal.Rptr. 130]; see also *Lewsadder* v. *Mitchum, Jones & Templeton, Inc.* (1973) 36 Cal.App.3d 255, 259 [111· Cal.Rptr. 405]; *Crofoot* v. *Blair Holdings Corp.* (1953) 119 Cal.App.2d 156, 182 [260 P.2d 156].)" (*Bos Material Handling, Inc.* v. *Crown Controls Corp.* (1982) 137 Cal.App.3d 99, 105-106 [186 Cal.Rptr. 740].)

The factual basis for plaintiffs' tort claims in this case persuades us the arbitration clause applies to such claims and the court erred in concluding otherwise. In the first place, defendants' alleged tort liability for failure to disclose that buyers of condominiums would be subject to assessments to pay for curbs, gutters, sewers, flood control structures and the like would have its roots in the purchaser-vendor relationship created by the purchase and sale contract containing the arbitration clause. (See *Berman* v. *Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999, 1003 [119 Cal.Rptr. 130].) Indeed, plaintiffs' entire complaint is predicated on the very claim that vital information was intentionally withheld by defendants in the communications between the parties leading up to that agreement. In this regard, the complaint specifically alleges that if plaintiff class members had been aware of the existence of the facts not disclosed by defendants, they would not have entered into the contract.

We find unpersuasive plaintiffs' contention the "in connection with" language should be limited in application to disputes involving deposit money, completion of the condominium unit, corrective work, or other aspects of the sale itself. A question as to whether critical information was intentionally withheld during the negotiation and formation of an agreement is clearly "connected" with that agreement. ■ In addition, we reject plaintiffs' argument that, because the arbitration clause defines the category of covered disputes in terms of "any arbitration *or legal action* instituted between Seller and Buyer" (italics added), the provision contemplates the filing of a legal action as an alternative to arbitration and is therefore ambiguous. While the language is somewhat awkward, as defendants correctly point out, the words "or legal action" in that sentence merely refer to the recovery of court costs and attorney's fees in cases in which arbitration has not been pursued. It does not limit the applicability of the clause or render it ambiguous.

Plaintiffs urge the decision of the first division of this district in *Weeks* v. *Crow* (1980) 113 Cal.App.3d 350 [169 Cal.Rptr. 830] compels us to affirm the trial court's order denying arbitration. Not so. The arbitration clause in *Weeks* arose in a medical services contract between an expectant father and mother and the hospital the mother entered for childbirth. In

holding the arbitration clause inapplicable to a malpractice action against the hospital for the wrongful death of the newborn baby, the court's analysis focused on the fact that the patient who was to receive services under the contract was the mother, not the newborn baby. The court concluded the arbitration clause did not cover an action for allegedly negligent care and treatment of the baby. (*Id.*, at pp. 352, 353.)

Thus, *Weeks* is legally distinguishable. In *Weeks* the hospital's attempt to compel arbitration of the wrongful death claim was rejected because the decedent, the baby, was at most only a third party beneficiary of the contract for medical services between the hospital and the parents. In the instant case, plaintiffs are primary parties to the contract and direct participants in the relationship created by that contract. Their right of action clearly arises "in connection with" that contractual relationship.

Having determined the court erred in concluding plaintiffs' complaint was outside the scope of the arbitration clause, we turn to plaintiffs' contentions that the arbitration clause is otherwise unenforceable. These arguments were included in plaintiffs' opposition to the petition to compel arbitration but were not specifically ruled on by the court in denying the petition.

## 2. *Enforceability of Arbitration Clause*

Plaintiffs principally contend the arbitration clause is unenforceable even if applicable to their complaint because it appears in a contract of adhesion and is either unconscionable or interferes with their reasonable expectations under the contract. In a related argument, plaintiffs assert that plaintiff Dennis J. Izzi failed to read the arbitration clause before signing the contract and that he therefore lacked the requisite knowledge to give informed consent to arbitral jurisdiction over the matter. (See generally, *Wheeler* v. *St. Joseph Hospital, supra,* 63 Cal.App.3d at pp. 354-367.)

A contract of adhesion has been defined as "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." (*Neal* v. *State Farm Ins. Cos.* (1961) 188 Cal.App.2d 690, 694 [10 Cal.Rptr. 781], cited in *Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 817 [171 Cal.Rptr. 604, 623 P.2d 165].) Even if the purchase agreement form furnished to plaintiffs by defendants was adhesive in nature, the contract would remain fully enforceable unless (1) all or part of the contract fell outside the reasonable expectations of the weaker party or (2) it was unduly oppressive or unconscionable under applicable principles of equity. (*Keating* v. *Superior Court* (1982) 31 Cal.3d 584, 594 [183 Cal.Rptr.

360, 645 P.2d 1192]; *Wheeler* v. *St. Joseph Hospital, supra,* 63 Cal.App.3d at p. 357.)

 The contract does appear to be standardized in form but that alone does not establish it is adhesive in character. There is nothing in the record establishing that buyers of the condominium units were offered the purchase agreements on a "take or leave it" basis. The assessment of the relative bargaining power among contracting parties is an imperfect discipline. The record is silent on the matter and no presumption is warranted that plaintiffs here had no choice or power to negotiate as to the terms of their purchase agreement or that they could not obtain comparable or superior terms on a suitable condominium nearby. (See *Smith* v. *Westland Life Ins. Co.* (1975) 15 Cal.3d 111, 122, fn. 12 [123 Cal.Rptr. 649, 539 P.2d 433].)

Even assuming arguendo the purchase agreement was adhesive in nature, we would still view it as enforceable. There is nothing in the circumstances of this case from which it appears the arbitration provision conflicts with the reasonable expectations of an ordinary person or is unduly oppressive or unconscionable. The challenged arbitration clause does not provide for an arbitral forum presumptively biased against either party. (See *Hope* v. *Superior Court* (1981) 122 Cal.App.3d 147, 154 [175 Cal.Rptr. 851].) The rules of the American Arbitration Association[3] specified by the clause as governing the resolution of disputes are generally regarded to be neutral and fair. In other words, even if defendants did have bargaining power superior to that of plaintiffs, the application of the arbitration clause to this dispute does not engender any unjust advantage to defendants. The invocation of the adhesion doctrine is unwarranted on these facts.[4]

 Since plaintiffs' adhesion contention has been rejected, the general rule applies that one who assents to a contract cannot avoid its terms on the ground he failed to read it before signing it. (*Madden* v. *Kaiser Foun-*

---

[3]We take judicial notice of the Commercial Arbitration Rules pursuant to Evidence Code sections 459, subdivision (a), and 452, subdivision (g). These rules are available from the regional office of the American Arbitration Association, 443 Shatto Place, Los Angeles, Cal. 90020.

[4]Plaintiffs' reliance on our opinion in *Wheeler* v. *St. Joseph Hospital, supra,* 63 Cal.App.3d 345 is misplaced. There the application of the adhesion concept was necessary to address the unequal bargaining power between a hospital and its patients. We viewed the standardized "Conditions of Admission" form used by the hospital to be oppressive in nature: "To the ordinary person, admission to a hospital is an anxious, stressful, and frequently a traumatic experience. . . . [T]he patient normally feels he has no choice but to seek admission to the designated hospital and to accede to all of the terms and conditions for admission . . . . Medical malpractice, much less arbitration of a medical malpractice claim, would hardly be a subject that enters the patient's mind." (*Id.,* 63 Cal.App.3d at p. 360.) No such exigent imbalance of bargaining power is likely to occur in the context of land purchase agreements generally, nor do we detect such condition in the present record.

*dation Hospitals* (1976) 17 Cal.3d 699, 710 [131 Cal.Rptr. 882, 552 P.2d 1178]; *Ramirez* v. *Superior Court* (1980) 103 Cal.App.3d 746, 754 [163 Cal.Rptr. 223]; *Bauer* v. *Jackson* (1971) 15 Cal.App.3d 358, 370 [93 Cal.Rptr. 43], and cases there cited; cf. *Wheeler* v. *St. Joseph Hospital, supra,* 63 Cal.App.3d at pp. 359-360.) Accordingly, plaintiffs' argument that they did not consent to arbitration because plaintiff Dennis J. Izzi failed to read the arbitration clause is not meritorious.

■ Plaintiffs' attempt to avoid arbitration by arguing the arbitration clause cannot be applied to named defendants who were not signatory to the purchase agreement requires only cursory discussion. Defendants James F. Temple, Nellie Swope and Laura Temple, the latter being the only named defendant who did not sign the agreement at least in a representative capacity, all joined in the motion to compel arbitration and on appeal seek reversal of the order denying arbitration. They have thereby effectively waived any objection they might have asserted to arbitration of the dispute and at oral argument through counsel expressly consented to arbitration. While the situation of the Doe defendants whose identity might be ascertained in the future is not actually known, such other defendants would presumably fall within the categorical description provided in paragraph 4 of plaintiffs' complaint: "At all times herein mentioned, each Defendant was the *agent and employee of the remaining Defendants* and was acting within the purpose and scope of his, her or its said agency or employment." (Italics added.) Thus such Doe defendants presumably would be subject to the agreement. The argument that the arbitration clause cannot be enforced against the nonsignatory defendants is thus largely without substance.

## 3. *Classwide Arbitration*

After stating its erroneous conclusion the arbitration clause was inapplicable to the instant dispute, the court added: "[T]he Court is unable to find any cases in which a class action lawsuit was ordered into arbitration." (9) To the extent this statement represents an alternative ground for the court's denial of arbitration and, in addition, to the extent the question of classwide arbitrability of this dispute is likely to arise on remand, we are obliged to dispose of the issue. (Code Civ. Proc., § 43.)

Initially, we note there is strong public policy favoring both class actions and arbitrations. Both are regularly acknowledged to be valuable procedures for expediting dispute resolution and ameliorating the burdens of formal litigation.

"[A]rbitration is generally considered to be a mutually advantageous process, providing for resolution of disputes in a presumptively less costly,

more expeditious, and more private manner by an impartial person or persons typically selected by the parties themselves. (See *Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699.)" (*Keating* v. *Superior Court, supra,* 31 Cal.3d at p. 595.) ▮▮▮ "There is a strong public policy in favor of arbitration agreements and the law is designed to encourage persons 'who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.' (*Utah Const. Co.* v. *Western Pac. Ry. Co.* [1916] 174 Cal. 156, 159 . . . .) Arbitration provides a means of giving effect to the intention of the parties [and] easing court congestion . . . ." (*Vernon* v. *Drexel Burnham & Co.* (1975) 52 Cal.App.3d 706, 715 [125 Cal.Rptr. 147].)

Judicial praise for the class action procedure has been equally fervent. "This court has repeatedly emphasized the importance of the class action device for vindicating rights asserted by large groups of persons. We have observed that the class suit '"both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation. . . ."' [Citation omitted.] Denial of a class action in cases where it is appropriate may have the effect of allowing an unscrupulous wrongdoer to 'retain[] the benefits of its wrongful conduct.' (*Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 808 . . . .) And, as we noted in *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 877 . . . : 'Controversies involving widely used contracts of adhesion present ideal cases for class adjudication; the contracts are uniform, the same principles of interpretation apply to each contract, and all members of the class will share a common interest in the interpretation of an agreement to which each is a party.'" (*Keating* v. *Superior Court, supra,* 31 Cal.3d at p. 609, fn. omitted.)

Plaintiffs contend, "An order compelling arbitration in this case would prevent the maintenance of a class action thus abrogating the public policy favoring such actions." For their part defendants contend that plaintiffs ". . . should not be allowed to avoid their agreement to arbitrate by asserting a class action lawsuit." Thus both parties apparently see class actions and arbitrations as irreconcilably incompatible. As framed by the parties the question for our disposition is which public policy should prevail over the other.

The parties' conception that class actions and arbitrations are necessarily and inherently incompatible appears to find considerable support in judicial precedent. (See, e.g., *Keating* v. *Superior Court, supra,* 31 Cal.3d at pp. 609-610; *Vernon* v. *Drexel Burnham & Co., supra,* 52 Cal.App.3d at pp. 711, 715-716; see also *Harris* v. *Shearson Hayden Stone, Inc.* (1981) 82 App.Div.2d 87 [441 N.Y.S.2d 70, 74-76].) Each of the cited cases

determined the public policy favoring arbitration *prevailed* over the policy favoring class actions. However, we are not entirely convinced the two procedures, both desirable, are irreconcilable. We entertain some thought that in cases in which the class action and arbitration devices would both appear to be appropriate and useful, recognition of a combined "classwide arbitration" mechanism, if properly administered and judiciously applied, might possibly preserve the essential values of both devices.

■ Indeed, whether or not our thoughts in this regard are justified, the law in California has already recognized the existence of a classwide arbitration procedure. In *Keating* v. *Superior Court, supra,* 31 Cal.3d 584, reversed on other grounds *sub nom. Southland Corp.* v. *Keating* (1984) 465 U.S. 1 [79 L.Ed.2d 1, 104 S.Ct. 852], the Supreme Court of California concluded that trial courts possess authority to order classwide arbitrations in appropriate cases. This authority was recognized within the penumbra of the express statutory power courts retain to order arbitrations consolidated. (See Code Civ. Proc., § 1281.3.) The court observed: "If the alternative in a case of this sort is to force hundreds of individual [parties] each to litigate its cause . . . in a separate arbitral forum, then the prospect of classwide arbitration, for all its difficulties, may offer a better, more efficient, and fairer solution. Where that is so, and gross unfairness would result from the denial of opportunity to proceed on a classwide basis, then an order structuring arbitration on that basis would be justified." (*Keating, supra,* 31 Cal.3d at p. 613.)

The "difficulties" referred to by the *Keating* court in sanctioning classwide arbitrations involve the undetermined extent to which a court must supervise a classwide arbitration ". . . in order to safeguard the rights of absent class members to adequate representation and in the event of dismissal or settlement." (*Ibid.*) We would add that courts should refrain from unnecessary intrusions which would impair the arbitration's function as a speedy, ". . . complete proceeding, without resort to court facilities . . . ." (*East San Bernardino County Water Dist.* v. *City of San Bernardino* (1973) 33 Cal.App.3d 942, 950 [109 Cal.Rptr. 510], quoting from *Application of Katz* (1957) 3 App.Div.2d 238 [160 N.Y.S.2d 159, 161].)

Subsequent to the *Keating* decision, which involved a class numbering in the hundreds, the first division of this district has ordered classwide arbitration in a securities margin accounts dispute involving a class numbering in the hundreds of thousands.[5] (*Lewis* v. *Prudential Bache Securities, Inc.* (1986) 179 Cal.App.3d 935, 945-946 [225 Cal.Rptr. 69].) The court

---

[5]Plaintiffs' complaint estimates there would be about 140 potential class members in the present case.

stated: "The alternative to class arbitration here is to force each Prudential customer to individually arbitrate claims, most of which probably cannot justify the time and money required to prove. This case appears to offer no great difficulty in adapting arbitration to fit the class action mold, with adequate judicial supervision over the class aspects." (*Id., 179* Cal.App.3d at p. 946.)

The present case would appear to be an especially appropriate one for class action treatment because the individual compensatory damages claim per member is relatively small ($3,000) and is based on a standardized document subject to common proof, while the punitive damages claim is quite large ($5 million). Multiple litigation of these damage claims would be inefficient in the extreme and, in respect to individual punitive damage claims, would pose the danger of being both duplicative and cumulative.

We are aware of no compelling reason why a classwide arbitration cannot proceed in this case. The class is relatively small, the provision of notice should not prove difficult, the merits of the case are rather straightforward, and neither party contends prejudice will result. However, the record is decidedly sparse and the court below is therefore in a better position than this court to determine the practicability of a classwide arbitration procedure. We shall therefore remand the case to the trial court for that determination. The court may limit its initial decision on remand to the specific issue of whether or not the action should proceed on a classwide arbitration basis. Such determination may be made on the court's own motion prior to any motion from the parties seeking certification of the class. Alternatively, the court may withhold such determination until one is sought by the parties. (See generally 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 222, pp. 271-273.)

If the court deems the classwide arbitration practicable, it may stay its order compelling arbitration pending its determination of the class action issues, including certification of the class, provision of notice and any discovery problems involved therein. Alternatively, if the court deems it preferable, it may order arbitration and reserve jurisdiction over these matters.[6]

---

[6]In theory at least it seems possible the court could order class action issues determined, at least in the first instance, by the arbitrator. Arbitrators are authorized by law to determine all necessary questions to resolve the controversy submitted including questions of law; it is also within the province of the arbitrator to decide which questions are necessary for resolution. (*Orpustan* v. *State Farm Mut. Auto. Ins. Co.* (1972) 7 Cal.3d 988, 991-992 [103 Cal.Rptr. 919, 500 P.2d 1119]; see Code Civ. Proc., § 1280, subd. (c).) Delegating the class certification and notice functions to the arbitrator in the first instance subject to due process review by the court might enhance the integrity and autonomy of the classwide

## *Disposition*

The order denying defendants' petition to compel arbitration is reversed and the trial court is directed to file a new order granting the petition. The court may on its own motion, and shall on the motion of either party, determine whether a classwide arbitration procedure is practicable in this case. If it determines such procedure practicable, the court shall either stay its order compelling arbitration until it has resolved the class action issues or, alternatively, retain jurisdiction over the class action issues and discovery necessary thereto.

Campbell, P. J., and Dorr, J.,* concurred.

---

arbitration device. (See Note, *Classwide Arbitration: Efficient Adjudication or Procedural Quagmire?* (1981) 67 Va.L.Rev. 787, 811-813.) However, frequent interruption of the arbitration proceeding for due process review of the arbitrator's class action determinations would be disruptive and largely destructive of the benefits to be had from arbitration, so at least until greater experience with these problems has been had, judicial determination of the class action problems would seem preferable.

*Assigned by the Chairperson of the Judicial Council.