[No. C003057. Third Dist. Nov. 18, 1987.]

RICHARD POWERS, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY,
Respondent;
DIXIE HOFFMAN et al., Real Parties in Interest.

**COUNSEL**

Peter Axelrod and Reid & Axelrod for Petitioner.

No appearance for Respondent.

J. Chauncey Hayes, Paul D. Hoskins, Longyear & Hayes and James Elmer for Real Parties in Interest.

**OPINION**

PUGLIA, P. J.—For the second time, we are called upon to undertake interlocutory review of the trial court's ruling on cross-motions for summary adjudication of issues in the underlying action for personal injuries and loss of consortium. The issue presented by the earlier petition as well as the instant one concerns the enforceability and effect of two documents signed by real party in interest, Dixie Hoffman, when she rented an ultralight aircraft from petitioner (defendant). Those writings included the basic rental terms as well as provisions purporting to release and indemnify defendant

from any liability for injuries to person or property arising out of Dixie Hoffman's use of the ultralight aircraft for recreational flying. We attach the two agreements to this opinion as Appendices A and B.

The agreements were signed on May 10, 1984, immediately before Dixie Hoffman's first solo flight in an ultralight. After takeoff, the aircraft's engine failed and it crashed, striking a stack of baled hay. Dixie Hoffman's husband, real party in interest and coplaintiff Gerald Hoffman, observed the accident. Dixie Hoffman and her husband (plaintiffs) sued defendant Powers and several other individuals and entities for personal injuries, emotional distress, and loss of consortium.

Both sides sought summary adjudication of the question whether the release and indemnity provisions were valid and effective. Plaintiffs requested a finding that only the exculpatory language contained in the less inclusive of the two release agreements (Appen. B), which did not specifically absolve defendant of liability for negligence, was enforceable. Defendant asked for an adjudication that the release and indemnity provisions protected him from liability on all causes of action. In its first ruling the superior court denied both motions on the ground that there was a triable issue of fact as to whether the language in question was sufficiently clear and unambiguous to be enforceable. (See *Ferrell* v. *Southern Nevada Off-Road Enthusiasts, Ltd.* (1983) 147 Cal.App.3d 309, 318 [195 Cal.Rptr. 90].) At the mutual request of the parties we issued a writ of mandate directing the superior court to rule on the motions, on the ground that whether the writings were ambiguous is a question of law. (C000883 and C000885.) On reconsideration, the lower court held that the existence of two separate agreements created an ambiguity which abrogated their effectiveness. Accordingly, it granted plaintiffs' motion for summary adjudication and denied defendant's. ■ Defendant contends that the trial court has again erred. We agree.

The contractual provisions in dispute are, as noted, found in a pair of agreements signed by plaintiff Dixie Hoffman immediately prior to takeoff. The first bears the heading "Waiver and Release From Liability and Indemnity Agreement." (Appen. A.) The other is entitled "Aircraft Rental and Student Instruction Agreement and Release from Liability." (Appen. B.) Both are in a standard size type, easily legible, with no fine print.

■ Release, indemnity and similar exculpatory provisions are binding on the signatories and enforceable so long as they are " . . . clear, explicit and comprehensible in each [of their] essential details. Such an agreement, read as a whole, must clearly notify the prospective releasor or indemnitor of the effect of signing the agreement." (*Ferrell* v. *Southern Nevada Off-*

*Road Enthusiasts, Ltd., supra,* 147 Cal.App.3d at p. 318; and see *Hulsey* v. *Elsinor Parachute Center* (1985) 168 Cal.App.3d 333, 340-341 [214 Cal.Rptr. 194].)

 Plaintiffs do not contend that either of the agreements considered individually fails to meet these criteria. Rather, relying on *Conservatorship of Link* (1984) 158 Cal.App.3d 138 [205 Cal.Rptr. 513], they assert that the use of two writings, containing different (but not conflicting) language, creates an inherent ambiguity which requires that the more inclusive and specific agreement (Appen. A) be disregarded. Defendant, of course, takes the position that both contracts are effective and binding and protect him from liability.

In *Conservatorship of Link, supra,* the court considered the enforceability of exculpatory wording contained in two documents signed as a condition of entry into the "pit" area of a car racing event. The first release was printed at the top of a sign-in sheet which the releasor signed upon entry to the track. The other was a "pit pass" which was signed and retained by Link containing more general language which did not specifically absolve the issuer of liability for negligence. The provision appended to the sign-in sheet was in five-and-one-half-point type " . . . so small that one could conclude defendants never intended it to be read." (*Id.,* at p. 141.) Furthermore, the exculpatory language was so situated that it would not be easily noticed, and was "contained in the third paragraph in a convoluted 193-word sentence." (*Id.,* at p. 143.) These features, in the opinion of the *Link* court, rendered the sign-in sheet release insufficiently clear, explicit and free from ambiguity to be enforceable. The court therefore concluded that only the pit pass, which did not specifically limit liability based on negligence, constituted the parties' understanding. In so holding, the court stated "[d]efendants' use of two release agreements framed in different language created an ambiguous, confusing situation which must be resolved against defendants." (*Ibid.*)

In the instant case, plaintiffs contend that the last quoted excerpt from *Conservatorship of Link* compels a similar result in any situation where there are two discrete contracts containing different terms. We think plaintiffs' interpretation of the *Link* decision is unduly broad. The conclusion reached there was clearly premised on the determination that the more specific and all encompassing terms in the sign-in sheet were too obscure, uncertain and diminutive in type size to be relied upon. Unlike plaintiffs, we do not find in *Link* any implication that clearly written, easily legible and specifically phrased release and indemnity terms will be denied effect merely because they appear in multiple documents containing somewhat different exculpatory clauses.

Neither the "Waiver and Release From Liability and Indemnity Agreement" (Appen. A) nor the "Aircraft Rental and Student Instruction Agreement and Release From Liability" (Appen. B) signed by plaintiff suffers from any of the defects relied upon by the *Link* court to void the exculpatory language found on the sign-in sheet considered in that case. Accordingly, we shall direct the superior court to set aside its order granting plaintiffs' motion for summary adjudication.

However, we shall not grant all the relief prayed for in defendant's petition. In addition to asking for vacation of the trial court's order granting plaintiffs' motion, defendant also asks us to direct that his motion be granted in its entirety. Defendant's motion sought not only an adjudication that both release and indemnity agreements are sufficiently clear and unambiguous to constitute an effective defense to plaintiff Dixie Hoffman's claims, but also to require that she indemnify defendant for any damages awarded Gerald Hoffman in his emotional distress and loss of consortium action. From the record we have been furnished, it appears that the trial court, in granting plaintiffs' motion, found it unnecessary to rule on this latter issue, nor was the court required to decide whether the "Waiver and Release From Liability and Indemnity Agreement" (Appen. A) constituted a valid contract in light of language in the document reciting that the purpose of the flight was to determine if the releasor wished to buy the aircraft, whereas it was stipulated plaintiff had no such purpose. The effect, if any, of these contractual provisions and the question of fraud in the inducement we leave for the trial court to resolve in the first instance.

Let a peremptory writ of mandate issue directing respondent court to vacate its order granting plaintiffs' motion for summary adjudication and to enter a new order denying that motion. The writ shall further direct respondent court to vacate its order denying defendant's motion for summary adjudication, and redetermine that motion in accordance with the views expressed herein.

Evans, J., and Sims, J., concurred.

A petition for a rehearing was denied December 18, 1987, and the opinion was modified to read as printed above. The petition of real parties in interest for review by the Supreme Court was denied February 4, 1988.

## Appendix A

WAIVER AND RELEASE FROM
LIABILITY AND INDEMNITY AGREEMENT

WHEREAS, the undersigned releasor is desirous that he be permitted to ride, fly and otherwise operate a FlightStar and/or DualStar ultralight aircraft (the "Aircraft") manufactured by PIONEER INTERNATIONAL AIRCRAFT, INC. ("PIONEER") for the purpose of determining if he wishes to buy such Aircraft;

WHEREAS, in order to be permitted to ride, fly and otherwise operate the Aircraft, he is willing to take upon himself, and release all others from, the full responsibility for any and all injuries, losses and damages which may occur to or be inflicted upon himself or his property, or the property or person of any other individual or entity, including either or both _ULTRA -ONE_ and "PIONEER" the owner of the Aircraft, and

WHEREAS, the undersigned releasor fully understands that any instructions which are given to him concerning the operation of the Aircraft, and any permission to ride, fly or otherwise operate the Aircraft, have been undertaken and permitted only because of his willingness to waive and release the claims and rights mentioned in this document, and

WHEREAS, the undersigned releasor fully understands that flying and piloting any aircraft in general and the Aircraft in particular is potential hazardous and the possibility of serious injury or death exists, and

WHEREAS, the undersigned releasor fully understands that flying and piloting the Aircraft is separate, distinct, and different in many respects from flying and piloting other aircraft;

THEREFORE, in consideration of the permission granted to him to ride, fly and otherwise operate the Aircraft, and the instructions relating thereto, the undersigned releasor unconditionally agrees as follows:

1. He hereby WAIVES and RELEASES any and all claims, rights and/or causes of action which he now has or may have against either or both _ULTRA -ONE_ and "PIONEER", and their respective officers, directors, stockholders and employees, FOR ANY AND ALL CLAIMS, SUITS, LIBABILITY, INJURIES, LOSSES OR DAMAGES which may occur to or be inflicted upon himself or his property, including but not limited to those which relate to, or which may in any way arise out of:

 (A) Any negligence of either or both _ULTRA -ONE_ and "PIONEER" and their respective officers, directors, stockholders and employees.

 (B) Any attempt by releasor, whether successful or not, to ride, fly or otherwise operate the Aircraft.

 (C) Any instruction, or lack thereof, provided to releasor concerning flying, operating, maintaining and assembling the Aircraft.

2. He hereby indemnifies and holds harmless those persons, firms or corporations listed above from any and all claims, suits, liability, injuries, losses and damages to the person or property of any individual or entity which arises out of his operation or attempted operation of the Aircraft.

3. He acknowledges that he is in good physical condition, is physically able to operate the Aircraft, and has become sufficiently familiar with its characterisitics and its operation, so that he is willing to undertake the operation of the same at his own risk.

4. He acknowledges that he is fully aware this flight involves travel in three dimensions, and that such activity is subject to mishap, injury and possibly even death.

5. He acknowledges that flying and piloting the Aircraft is separate, distinct and different in many respects from flying and piloting other aircraft.

6. He acknowledges that there are NO EXPRESS WARRANTIES, NO IMPLIED WARRANTY OF MERCHANTABILITY and NO WARRANTY OF FITNESS OF THE AIRCRAFT FOR ANY PARTICULAR PURPOSE, and that the flight is attempted solely at his own risk.

7. He is over eighteen (18) years of age, and if married, has executed this document on behalf of himself, his spouse and the marital community which they compromise.

8. The contents of this document shall be forever binding upon the releasor, his dependents, heirs, personal representatives and estate. The use of the masculine gender herein shall apply equally to males and females.

9. HE HAS READ THIS ENTIRE DOCUMENT, UNDERSTANDS ITS CONTENTS, KNOWS OF THE TRUTHFULNESS THEREOF, AND HAS BEEN PROVIDED WITH A COPY OF THE SAME.

IN WITNESS OF MY AGREEMENT to the foregoing, the undersigned releasor executes this document on the _____19_____ day of _May_, 1991

THIS IS A RELEASE

_____
Signature of Releasor

_____
Witness to Signature

Printed Name and
Address of Releasor

_Dixie Hoffman_
_4900 _____ St._
_Fair Oaks, CA_
_____Phone _95628_

## APPENDIX B

### AIRCRAFT RENTAL AND STUDENT INSTRUCTION AGREEMENT AND RELEASE FROM LIABILITY

ULTRA ONE FLIGHT CLUB, its owners, agents and employees, hereinafter "Lessor", hereby rents to _____ hereinafter "Student", a Flightstar or Dual Star ultralight aircraft, hereinafter "Aircraft", at the rate of _15.°°_ per hour. Lessor shall provide instruction in the operation of Aircraft at the additional rate of _15.°°_ per hour. In consideration of the mutual covenant and conditions herein, the parties hereto agree to the following terms:

1. Student warrants that he is in good physical and mental condition;

2. Student understands that Aircraft is potentially hazardous and the possibility of serious injury or death exists. Student warrants that he has had prior instruction in the operation and inspection of aircraft and that he is responsible for verifying proper maintenance and airworthiness of Aircraft. Student warrants that he has visually inspected Aircraft and has determined that Aircraft is in good working order;

3. Student agrees to operate Aircraft in a safe and prudent manner and observe all applicable laws and regulations pertaining to use of Aircraft. Student further agrees to follow and abide by all instructions and commands of the instructor;

4. Student shall indemnify and hold harmless Lessor, its agents and employees, from and against all loss, liability and expense caused by or arising out of Student's failure to comply with the terms of this agreement;

5. Student agrees to assume full responsibility and risk for all losses, including mechanical damage to Aircraft and injuries or death and property damage caused by Student. Student RELEASES Lessor from any and all claims for losses and damages caused by or arising from operation of Aircraft;

6. LESSOR MAKES NO WARRANTIES TO STUDENT, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE; and,

This agreement embodies the entire agreement of the parties. If any provision herein is declared invalid, all other provisions shall nonetheless remain in full force and effect. If any action is instituted to enforce any provision herein the prevailing party shall be entitled to reasonable attorney fees.

Dated: 5-19-84

_____
STUDENT

Dated: 5/19/84

_____
LESSOR

I have read and understand the foregoing and agree to its contents. I have received an aircraft checklist and verified each item of said checklist on Aircraft Number _6_ I further acknowledge receipt of aircraft.