[No. B044644. Second Dist., Div. Two. Nov. 16, 1989.]

NATIONAL AND INTERNATIONAL BROTHERHOOD OF STREET RACERS, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
RICHARD CASTRO, Real Party in Interest.

[No. B045173. Second Dist., Div. Two. Nov. 16, 1989.]

CITY OF LOS ANGELES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
RICHARD CASTRO, Real Party in Interest.

COUNSEL

Agajanian, McFall & Hewitt and R. Mac Prout for Petitioner in No. B044644.

Hancock, Rothert & Bunshoft, Forrest Booth, Debra J. Wegman and Lynne M. Olcott for Petitioner in No. B045173.

No appearance for Respondent.

Heller & Owen, Gregory James Owen, Greines, Martin, Stein & Richland and Alan G. Martin for Real Party in Interest.

OPINION

COMPTON, J.—In a personal injury action, two defendants, by separate petitions for writ of mandate, seek to compel the trial court to grant their

motions for summary judgment on the basis of a release signed by the plaintiff before his injury.

Plaintiff is a professional automobile and race car mechanic and an experienced race car driver. On January 15, 1984, he competed in an automobile drag race at a track on Terminal Island. His car, a top-fuel dragster, was capable, in his words, of "unlimited" speed. With plaintiff at the wheel, the car left the starting line in reverse gear and crashed into shipping containers. Plaintiff was removed from the car and taken by ambulance to a hospital. He suffered crippling injuries.

Plaintiff sued the race organizer, the landowner, the ambulance company, the hospital, a hospital physician, and the owner of the shipping containers. The present petitions, however, concern only the claims against the race organizer (petitioner National and International Brotherhood of Street Racers, Inc.) and the landowner (petitioner City of Los Angeles).

In connection with competing in the race, the contestants, including plaintiff, signed a printed release. The tenor of the release was an agreement that any injury the signatories might suffer would not be the legal responsibility of the track owner or the race organizer. A copy of the release is attached as an exhibit to this opinion. It contains the following language: "I . . . Do Hereby: [¶] 1. Release, Discharge and Covenant Not to Sue the track operators, track owners, land owners, racing association, and each of them . . . from any and all claims and liability arising out of . . . ordinary negligence of releasees or any other participant which causes the undersigned injury, death, damages or property damage. . . . [¶] 2. [I] Understand . . . that there is Inherent Danger in racing which I appreciate and voluntarily assume . . . . I have inspected the racing surface, access roads, shoulders, equipment, barriers or lack thereof . . . I Voluntarily Elect to Accept All Risks connected with my . . . participation in any racing events. . . . [¶] I Have Read This Document. I Understand It Is A Release of All Claims. [¶] I Understand I Assume All Risk Inherent in Racing. [¶] I Voluntarily Sign My Name Evidencing My Acceptance of the Above Provisions."

■ Petitioners moved for summary judgment on the basis of this release. In opposition, plaintiff argued his injuries had been substantially aggravated by the manner in which he was rescued after the crash. He contended rescue personnel, lacking essential extrication equipment or

proper training, "twisted his body to work it out of the car and then wrenched his helmet from his head [and thus] left him a quadriplegic." He sought to hold petitioners liable for failure to assure the presence of appropriate extrication equipment and of properly trained rescue personnel. Finally, he argued "the lack of competent medical attention and adequate rescue equipment is not an inherent risk of drag racing."

The trial court ruled the release did not entitle petitioners to summary judgment, and these petitions followed.[1]

The petitions will be granted. The release was unlimited in scope, and we have no difficulty in concluding plaintiff's blanket release of responsibility on the part of the race organizer and landowner was all-encompassing.

Plaintiff contends that because the release at one point states, "I assume all risk inherent in racing," claims for injuries due to risks not inherent in racing were not released, and a trial is necessary to determine whether any of the risks which harmed him was one not inherent in racing. This is a misreading of the release, which in unqualified terms releases all claims arising from plaintiff's participation in the race.

Drafters of releases always face the problem of steering between the Scylla of simplicity and the Charybdis of completeness. Apparently no release is immune from attack. If short and to the point, a release will be challenged as failing to mention the particular risk which caused a plaintiff's injury (see *Coates* v. *Newhall Land & Farming, Inc.* (1987) 191 Cal.App.3d 1, 8-9 [236 Cal.Rptr. 181]) or as insufficiently comprehensive (see *Celli* v. *Sports Car Club of America, Inc.* (1972) 29 Cal.App.3d 511, 519 [105 Cal.Rptr. 904]). It will be attacked as totally ineffective if a key word is placed in the caption for emphasis but not repeated in the text (see *Ferrell* v. *Southern Nevada Off-Road Enthusiasts, Ltd.* (1983) 147 Cal.App.3d 309 [195 Cal.Rptr. 90]), or if, despite unambiguous language, the word "negligence" is not used (see *Scroggs* v. *Coast Community College Dist.* (1987) 193 Cal.App.3d 1399 [239 Cal.Rptr. 916]). If the drafter avoids these shortcomings by adding details and illustrations, the plaintiff invokes the doctrine *expressio unius exclusio alterius est* and characterizes the causative hazard

---

[1] The trial court did grant summary judgment to the City of Los Angeles on a different ground, governmental immunity from liability for injuries to participants in hazardous recreational activities. (Gov. Code, § 831.7.) Facing the uncertainties of an appeal, however, the city petitioned for a writ of mandate based on the release.

We reject plaintiff's contention that both defendants' petitions must be denied as untimely filed.

as one not found among those listed in the release, but if the list ends with an inclusive term—"and all other risks not specifically enumerated"—it will be argued, under the principle *ejusdem generis,* that the risk encountered is nonetheless not assumed, because its nature is different from those listed. If the drafter strives to be comprehensive, the release is attacked as unduly lengthy (see *Conservatorship of Link* (1984) 158 Cal.App.3d 138, 142 [205 Cal.Rptr. 513]), but if he fits it onto a single page, the type size will be criticized as inadequate (see *Bennett* v. *United States Cycling Federation* (1987) 193 Cal.App.3d 1485, 1489 [239 Cal.Rptr. 55]). If the significance of the release is emphasized by its repetition in two documents, any variation in wording fuels a challenge. (See *Powers* v. *Superior Court* (1987) 196 Cal.App.3d 318, 321 [242 Cal.Rptr. 55].)

In cases arising from hazardous recreational pursuits, to permit released claims to be brought to trial defeats the purpose for which releases are requested and given, regardless of which party ultimately wins the verdict. Defense costs are devastating. Unless courts are willing to dismiss such actions without trial, many popular and lawful recreational activities are destined for extinction.

To be effective, a release need not achieve perfection; only on Draftsman's Olympus is it feasible to combine the elegance of a trust indenture with the brevity of a stop sign. "Whoever thinks a faultless piece to see, Thinks what ne'er was, nor is, nor e'er shall be." (Pope, Essay on Criticism, pp. 253-254.) It suffices that a release be clear, unambiguous, and explicit, and that it express an agreement not to hold the released party liable for negligence. (See *Madison* v. *Superior Court* (1988) 203 Cal.App.3d 589, 596-600 [250 Cal.Rptr. 299].) This was accomplished here.

This is a proper case for issuance of peremptory writs in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-180 [203 Cal.Rptr. 626, 681 P.2d 893].) The matter having been fully briefed, issuance of alternative writs would add nothing to the exposition of the issues.

Let peremptory writs of mandate issue, directing respondent to vacate its orders of August 21 and 29, 1989, denying petitioners' motions for summary judgment on the ground of release, and to enter new orders granting the

motions on that basis. Petitioners to recover their costs from real party in interest.

Roth, P. J., and Fukuto, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied February 1, 1990.

APPENDIX

**VOLUNTARY RELEASE — ASSUMPTION OF RISK AND INDEMNITY AGREEMENT**

Track Name _Brotherhood Raceway_     Date _1-15-84_

Each undersigned person requests and is granted permission (1) to enter the RESTRICTED AREA , (2) to participate as driver, crew or assistant in racing events, (3) to compete for money, prizes, recognition or reward, (4) to be covered by participants' hospitalization insurance, if applicable, as limited by the master insurance policy (all collectively herein called "permissive entry").

In consideration of "permissive entry" to the restricted area, which is the area from which admission to the general public is restricted, which includes but is not limited to the pit area, racing surface, infield, adjacent walkways, concessions, and other appurtenances, I (each of the undersigned) for myself, my personal representatives, heirs, next of kin, spouse and assigns, DO HEREBY:

1. **RELEASE , DISCHARGE AND COVENANT NOT TO SUE** the track operators, track owners, land owners, racing association, and each of them, their officers, agents and employees (all hereinafter collectively referred to as "releasees") from any and all claims and liability arising out of strict liability or ordinary negligence of releasees or any other participant which causes the undersigned injury, death, damages or property damage. I hereby covenant to hold releasees harmless and indemnify releasees for any claim judgment or expense releasees may incur arising out of my activities or presence in the restricted area.

2. **UNDERSTAND** that my entry into the restricted area and/or participation in racing events contains DANGER AND RISK OF INJURY OR DEATH , that conditions of the racing surface change from time to time and may become more hazardous, and that there is INHERENT DANGER in racing which I appreciate and voluntarily assume, because I choose so to do. I have observed many races of the type that I seek to participate in, I have inspected the racing surface, access roads, shoulders, equipment, barriers or lack thereof, lighting or lack thereof, and the weather conditions, I further know that other contestants and participants pose a danger to me, nevertheless, I VOLUNTARILY ELECT TO ACCEPT ALL RISKS connected with my entry into the restricted area and/or participation in any racing events.

3. **ACKNOWLEDGE** that I am aware of all track and equipment safety regulations and I have complied with each regulation. If I have failed so to do, I ASSUME ALL RISK for myself and assume all liability to others for such failure, and I hereby RE-LEASE releasees for any failure in inspecting my vehicle or others. I am not an agent, servant or employee of releasees and no oral representations or inducements have been made to me to sign this agreement. If any portion of this agreement is held invalid, it is agreed that the balance thereof shall continue in full legal force and effect.

4. **AGREE** that this agreement shall apply to any incident, injury, accident or death occurring at the captioned track on the above date, and to any incident, injury, accident or death occurring within a period of one (1) year after the execution of this agreement.

I HAVE READ THIS DOCUMENT. I UNDERSTAND IT IS A RELEASE OF ALL CLAIMS.
I UNDERSTAND I ASSUME ALL RISK INHERENT IN RACING.
I VOLUNTARILY SIGN MY NAME EVIDENCING MY ACCEPTANCE OF THE ABOVE PROVISIONS.

| NAME | CAR NO. | NAME | CAR NO. |
|---|---|---|---|
| _(signature)_ | F | _(signature)_ | 208 |
| _(signature)_ | 200 | _(signature)_ | 210 |
| _(signature)_ | 201 | _(signature)_ | 211 |
| _(signature)_ | 0905 | _(signature)_ | 6250 211 |
| _(signature)_ | 1M | _(signature)_ | 212 |
| _(signature)_ | 203 | _(signature)_ | 213 |
| _(signature)_ | 204 | _(signature)_ | 213P |
| _(signature)_ | 205 | _(signature)_ | 213P |
| _(signature)_ | 206 | _(signature)_ | 6969 |
| _(signature)_ | 207 | _(signature)_ | 214 |
| _(signature)_ | 2M | _(signature)_ | 215 |
| _(signature)_ | 3M | _(signature)_ | 215P |
| _(signature)_ | 208 | _(signature)_ | 216 |
| _(signature)_ | 209 | _(signature)_ | 608 217 |

LS-7600 (12-78)