[No. B067811. Second Dist., Div. Seven. July 14, 1993.]

LEMONIA T. RANDAS, Plaintiff and Appellant, v.
YMCA OF METROPOLITAN LOS ANGELES, Defendant and
Respondent.

**COUNSEL**

Paul A. Connolly for Plaintiff and Appellant.

Lynberg & Watkins and Stephen M. Harber for Defendant and Respondent.

**OPINION**

**WOODS (Fred), J.**—In this personal injury action, plaintiff-appellant appeals from an adverse summary judgment and contends the release she signed was invalid because against public interest (*Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693]) and because she couldn't read it. We affirm the judgment.

### PROCEDURAL AND FACTUAL BACKGROUND

The facts are simple and undisputed.[1]

Sometime before August 8, 1991, Lemonia T. Randas (plaintiff and appellant), literate in Greek but not English, enrolled in a swimming class at a local YMCA (YMCA of Metropolitan Los Angeles; respondent[2]). She was provided a "RELEASE AND WAIVER OF LIABILITY AND INDEMNITY AGREEMENT" which she signed. On August 8, 1991, after her swimming class, she slipped and fell on the wet poolside tile, injuring herself.

On January 9, 1992, she filed the instant personal injury action. Respondent answered and later moved for summary judgment. (Code Civ. Proc., § 437c.) The trial court granted the motion. This appeal followed.

---

[1] Appellant concedes the issue is one of law.

[2] The complaint erroneously identified defendant-respondent as SOUTH PASADENA-SAN MARINO YMCA.

## DISCUSSION

As appellant implicitly concedes, if the release she signed is valid summary judgment was properly awarded to respondent.

We consider her contentions that the release is not valid.

1.  *Appellant contends the release affects the public interest and is invalid under Civil Code section 1668.*[3]

■ If an exculpatory provision, such as the subject release, involves "the public interest" it is invalid under Civil Code section 1668. (*Tunkl* v. *Regents of University of California, supra,* 60 Cal.2d 92, 96.) As *Tunkl,* the seminal case, stated: "[n]o definition of the concept of public interest can be contained within the four corners of a formula." (*Id.* at p. 98.) *Tunkl* instead listed *characteristics,*[4] some or all of which characterize invalid exculpatory provisions. It held that "the hospital-patient contract clearly falls within the category of agreements affecting the public interest." (*Id.* at p. 101.)

This court has previously considered exculpatory provisions challenged on "public interest" grounds. In *Gardner* v. *Downtown Porsche Audi* (1986) 180 Cal.App.3d 713 [225 Cal.Rptr. 757] we found an automobile repair garage disclaimer affected the public interest and thus was invalid. More recently, in *Buchan* v. *United States Cycling Federation, Inc.* (1991) 227 Cal.App.3d 134 [277 Cal.Rptr. 887], we found an international bicycle racing competition *not* to involve a public interest.

■ We observed in *Buchan*: "This court has not been apprised of any case . . . which . . . voided a release on . . . 'public interest' [grounds]

[3]The section reads: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

[4]"It concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents." (60 Cal.2d at pp. 98-101, fns. omitted.)

. . . in the sports and recreation field." (227 Cal.App.3d at p. 149.) We had in mind such cases as *Hulsey* v. *Elsinore Parachute Center* (1985) 168 Cal.App.3d 333 [214 Cal.Rptr. 194] [parachute jumping]; *McAtee* v. *Newhall Land & Farming Co.* (1985) 169 Cal.App.3d 1031 [216 Cal.Rptr. 465] ["motocross" race]; *Okura* v. *United States Cycling Federation* (1986) 186 Cal.App.3d 1462 [231 Cal.Rptr. 429] [bicycle race]; *Coates* v. *Newhall Land & Farming, Inc.* (1987) 191 Cal.App.3d 1 [236 Cal.Rptr. 181] [dirt-bike park]; *Saenz* v. *Whitewater Voyages, Inc.* (1990) 226 Cal.App.3d 758 [276 Cal.Rptr. 672] [commercial river rafting]. Our observation in *Buchan* remains true.

Swimming, like other athletic or recreational activities, however enjoyable or beneficial, is not "essential" as a hospital is to a patient (*Tunkl* v. *Regents of University of California, supra,* 60 Cal.2d 92) or a repair garage is to a California motorist. (*Gardner* v. *Downtown Porsche Audi, supra,* 180 Cal.App.3d 713.)

We find no reason to invalidate the release on public interest grounds.[5] Moreover, as one court recently noted there is good reason to validate such releases because "[t]he public as a whole receives the benefit of such waivers so that groups such as Boy and Girl Scouts, Little League, and parent-teacher associations are able to continue without the risks and sometimes overwhelming costs of litigation. Thousands of children benefit from the availability of recreational and sports activities. Those options are steadily decreasing—victims of decreasing financial and tax support for other than the bare essentials of an education. Every learning experience involves risk. . . . No public policy forbids the shifting of that burden." (*Hohe* v. *San Diego Unified Sch. Dist., supra,* 224 Cal.App.3d 1559, 1564.)

2. *Appellant contends the release is unclear and ambiguous.*

■ "An agreement exculpating the drafter from liability for his or her own future negligence must clearly and explicitly express that this is the intent of the parties." (*Saenz* v. *Whitewater Voyages, Inc., supra,* 226 Cal.App.3d 758, 764.) But "[t]o be effective, a release need not achieve perfection; only on Draftsman's Olympus is it feasible to combine the elegance of a trust indenture with the brevity of a stop sign." (*National & Internat. Brotherhood of Street Racers, Inc.* v. *Superior Court* (1989) 215 Cal.App.3d 934, 938 [264 Cal.Rptr. 44].)

The subject release (see appendix) is boldly captioned: "Release and Waiver of Liability and Indemnity Agreement." Its one-page text

---

[5]We reject appellant's attempted distinction of *Buchan, Hulsey, McAtee* et al. as involving "death defying" activities. Not only does *Tunkl* fail to include dangerousness as a relevant characteristic but bicycle riding (*Okura*), dirt bike riding (*Coates*), river rafting (*Saenz*) and hypnosis (*Hohe* v. *San Diego Unified Sch. Dist.* (1990) 224 Cal.App.3d 1559 [274 Cal.Rptr. 647]) are not "death defying" activities.

states: "1. THE UNDERSIGNED HEREBY RELEASES . . . the YMCA . . . from all liability to the undersigned . . . for any loss or damage . . . on account of injury to . . . the undersigned . . . caused by the negligence of the [YMCA] . . . ." It further states: "3. THE UNDERSIGNED HEREBY ASSUMES FULL RESPONSIBILITY FOR AND RISK OF BODILY INJURY . . . due to the negligence of [YMCA] . . . ."

We find the subject release neither unclear nor ambiguous. (See *National & Internat. Brotherhood of Street Racers, Inc.* v. *Superior Court, supra,* 215 Cal.App.3d 934; *McAtee* v. *Newhall Land & Farming Co., supra,* 169 Cal.App.3d 1031; *Saenz* v. *Whitewater Voyages, Inc., supra,* 226 Cal.App.3d 758.)

3. *Appellant contends the release is invalid because she couldn't read it.*

■ "It is well established, in the absence of fraud, overreaching or excusable neglect, that one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it." (*Hulsey* v. *Elsinore Parachute Center, supra,* 168 Cal.App.3d 333, 339; see also *Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 710 [131 Cal.Rptr. 882, 552 P.2d 1178]; *Izzi* v. *Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1318-1319 [231 Cal.Rptr. 315].)

Appellant made no claim of respondent's fraud or overreaching. Nor did appellant claim that respondent had reason to suspect she did not or could not read the release she had signed and which in full captions above and below her signature stated: "I HAVE READ THIS RELEASE."

As Mr. Witkin states: "Ordinarily, one who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it. If he cannot read, he should have it read or explained to him." (1 Witkin, Summary of Cal. Law (9th ed. 1987) § 120, p. 145.) This is not only the California but the general rule. (3 Corbin, Contracts (1960) § 607, pp. 668-669, fn. omitted ["One who signs an instrument when for some reason, such as illiteracy or blindness, he can not read it, will be bound by its terms in case the other party acts in good faith without trick or misrepresentation. The signer should have had the instrument read to him."].)

Appellant's contention is not well taken.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

Lillie, P. J., concurred. Johnson, J., concurred in the judgment only.

## YMCA OF METROPOLITAN LOS ANGELES

## RELEASE AND WAIVER OF LIABILITY AND INDEMNITY AGREEMENT

IN CONSIDERATION of being permitted to enter the YMCA for any purpose, including, but not limited to observation, use of facilities or equipment, or participation in any way, the undersigned, for himself or herself and any personal representatives, heirs, and next of kin, hereby acknowledges, agrees and represents that he or she has, or immediately upon entering will, inspect such premises and facilities. It is further warranted that such entry into the YMCA for observation, participation or use of any facilities or equipment constitute an acknowledgement that such premises and all facilities and equipment thereon have been inspected and that the undersigned finds and accepts same as being safe and reasonably suited for the purposes of such observation or use.

IF FURTHER CONSIDERATION OF BEING PERMITTED TO ENTER THE YMCA FOR ANY PURPOSE INCLUDING, BUT NOT LIMITED TO OBSERVATION, USE OF FACILITIES OR EQUIPMENT, OR PARTICIPATION IN ANY WAY, THE UNDER-SIGNED HEREBY AGREES TO THE FOLLOWING:

1. THE UNDERSIGNED HEREBY RELEASES, WAIVES, DISCHARGES AND COV-ENANTS NOT TO SUE the YMCA, its directors, officers, employees, and agents (hereinafter referred to as "releases") from all liability to the undersigned, his personal representatives, assigns, heirs, and next of kin for any loss or damage, and any claim or demands therefor on account of injury to the person or property or resulting in death of the undersigned, whether caused by the negligence of the releases or otherwise while the undersigned is in, upon, or about the premises or any facilities or equipment therein.

2. THE UNDERSIGNED HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS the releasees and each of them from any loss, liability, damage or cost they may incur due to the presence of the undersigned in, upon or about the YMCA premises or in any way observing or using any facilities or equipment of the YMCA whether caused by the negligence of the releasees or otherwise.

3. THE UNDERSIGNED HEREBY ASSUMES FULL RESPONSIBILITY FOR AND RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE due to the negligence of releasee or otherwise while in, about or upon the premises of the YMCA and/or while using the premises or any facilities or equipment hereon.

THE UNDERSIGNED further expressly agrees that the foregoing RELEASE, WAIVER AND INDEMNITY AGREEMENT is intended to be as broad and inclusive as is permitted by the law of the State of California and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect.

THE UNDERSIGNED HAS READ AND VOLUNTARILY SIGNS THE RELEASE AND WAIVER OF LIABILITY AND INDEMNITY AGREEMENT, and further agrees that no oral representations, statements or inducement apart from the foregoing written agreement have been made.

I HAVE READ THIS RELEASE

Date _____          /s/_____
                                          Signature of Applicant

I HAVE READ THIS RELEASE