**Paul OLIVELLI, et al. Plaintiffs**

**v.**

**SAPPO CORPORATION, INC., et al. Defendants**

**No. CIV. 99–2162(SEC).**

United States District Court, D. Puerto Rico.

Sept. 25, 2002.

Victor L. Marcello, Esq., Talbot, Carmouche & Marcello, González, LA, Lysette A. Morales–Vidal, Esq., Caguas, Richard Schell–Asad, Esq., Troncoso & Becker, San Juan, for Plaintiffs.

Roberto Marquez–Sánchez Esq., Law Offices Benjamín Acosta Jr., Francisco Colón Pagán, Esq., Colón, Colón & Martínez, San Juan, Mark A. Hruska, Boca Ratón, FL, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending is Sappo Corporation, Concho Corporation, Inc. and Chuck Rew's ("Defendants") motion for summary judgment. **(Docket # 32).** Paul Olivelli, John Paul Olivelli and Nicole Olivelli have filed an opposition to Defendants' motion for summary judgment, **(Docket # 34)**, and Defendants have filed a reply **(Docket # 35).** After careful consideration of the motion, opposition, reply and applicable law, Defendants' motion is **GRANTED.**

### Background

The Court's subject matter jurisdiction is invoked pursuant to 28 U.S.C. § 1332 (diversity of citizenship) as Plaintiffs bring a claim against Defendants for the wrongful death of Mary Jean Olivelli. Although our subject matter jurisdiction is invoked based on diversity of citizenship, Plaintiffs allege that because this case arises from an alleged maritime tort, the principles of admiralty law should govern.

The events alleged in the above-captioned matter took place off the coast of Guanica, Puerto Rico on October 22, 1997. On that day, Mary Jean Olivelli died during a tragic scuba diving excursion. At the time of her death, Ms. Olivelli was a student in an open-water scuba class taught by Defendant Chuck Rew at the Copa Marina Beach Resort. The Copa Marina Beach Resort is owned by Defendant Sappo Corporation, Inc. and managed by Defendant Concho Corporation, Inc.

Prior to Ms. Olivelli's death, she and her husband, Plaintiff Paul Olivelli, had enrolled in a scuba certification class offered by Paula German at "The Diver's Way Dive Shop" in Long Island, New York. Ms. German provided the Olivellis with the requisite academic and pool training necessary for certification. Thereafter, the Olivellis planned four open-water dives in Puerto Rico. These dives were to take place under Defendant Chuck Rew's supervision.

Before enrolling in the scuba classes in New York, Ms. Olivelli executed a standard "Liability Release and Express Assumption of Risk" form in favor of Ms. German, the Diver's Way Dive Shop, and International PADI, Inc. Upon their arriv-

al in Puerto Rico, and before their dives with Defendant Rew, the Olivellis executed a similar release agreement in favor of Chuck Rew, the Copa Marina, International PADI, Inc., and all other related entities, for their own negligence. In this agreement, the Olivellis also agreed to assume all risks associated with the dives, whether foreseen or unforeseen.[1]

The PADI open-water certification requires a candidate to perform four open water dives. The Olivellis performed their first three dives under Defendant Rew's supervision without incident. However, on their fourth and final dive, the tragic events that gave rise to this litigation took place. On that day, Ms. Olivelli completed her final dive and ascended to the surface with her instructor. She then swam to the dive platform, which is connected to the dive vessel. After removing her weight belt and buoyancy compensator vest, she hoisted herself onto the dive boat swim platform and suddenly collapsed.

Ms. Olivelli was transported back to shore, about one-mile from the dive site. At the shore, an Emergency Medical Technician team awaited the boat's arrival. Upon their arrival, Ms. Olivelli was transported to a clinic in Guanica, where she was ultimately pronounced dead. Dr. Yocasta Brugal determined that the cause of Ms. Olivelli's death was an air embolism.

Plaintiffs allege that the death of Ms. Olivelli was caused by the negligent acts of the Defendants, which are summarized as follows: (1) that they failed to adequately devise a dive plan, (2) that they failed to adequately supervise the dive, (3) that they failed to provide adequate first-aid on the vessel, and (4) that the boat was not functioning at full capacity. Defendants do not challenge the veracity of Plaintiffs' factual allegations in their motion for summary judgment. Instead, they claim that Plaintiffs have waived any and all claims related to Ms. Olivelli's death through the execution of the "Liability Release and Express Assumption of Risk," dated October 20, 1997.

**Summary Judgment Standard**

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *U.S. v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992); *see also Boston Athletic Assn. v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989); *Medina–Muñoz v. R.J. Reynolds Tobacco*, 896 F.2d 5, 8 (1st Cir.1990) ("[a] 'genuine' issue is

1. In their statement of contested facts, Plaintiffs deny that such an agreement was entered. However, they offer no evidence in support of their denial, and the agreement with Ms. Olivelli's signature is in the record.

one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir. 1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra,* § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martínez v. Colón,* 54 F.3d 980, 983–984 (1st Cir. 1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, not room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines,* 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the nonmoving party's case", *Maldonado-Denis v. Castillo-Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." *Lawton v. State Mutual Life Assurance Company of America,* 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must produce specific facts, in suitable evidentiary form' sufficient to limn a trialworthy issue .... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina-Muñoz,* 896 F.2d at 8, (*quoting Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

Local Rule 311(12), moreover, requires the moving party to "file annexed to the motion a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried ...." Unless the nonmoving party controverts this statement, all the material facts set forth therein "shall be deemed to be admitted." *Id.* This is the so-called "anti-ferret rule." *See, e.g., Orbi, S.A. v. Calvesbert & Brown,* 20 F.Supp.2d 289, 291 (D.P.R.1998). While failure to comply with this rule does not automatically warrant the granting of summary judgment, "it launches the nonmovant's case down the road toward an early dismissal." *Tavárez v. Champion Products, Inc.,* 903 F.Supp. 268, 270 (D.P.R.1995).

**Applicable Law/Analysis**

Although Plaintiffs' original complaint alleges diversity jurisdiction, pursuant to 28 U.S.C. § 1332, in their first amending

petition Plaintiffs aver that since this controversy arises from a maritime tort, the Court has admiralty or maritime jurisdiction, pursuant to 28 U.S.C. § 1333. The question presented is not whether the Court has subject matter jurisdiction over this matter, because we agree that this case is properly within the diversity jurisdiction of the federal court, but whether the Court should apply federal admiralty law or the substantive law of the Commonwealth of Puerto Rico.

The test for determining whether admiralty law applies was set forth by the Supreme Court in the case of *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 531–34, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). "In the *Grubart* decision, the Court clarified the jurisdictional requirements of 28 U.S.C. § 1333(1), by articulating a two-part test. A party wishing to assert maritime jurisdiction over a tort must satisfy both the 'location' and 'connection' requirements of the test." *Florio v. Olson,* 129 F.3d 678, 680 (1st Cir.1997) (citation omitted). In order to satisfy the location prong of the test, "a party must show either that the injury occurred on navigable water or that the injury was caused by a vessel on navigable water." *Id.,citing Grubart,* 513 U.S. at 534, 115 S.Ct. 1043. "In order to satisfy the 'connection' or 'nexus' requirement, the party must show that the type of incident involved has a potentially disruptive impact on maritime commerce and that the 'general character' of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Florio,* 129 F.3d at 680.

The parties do not dispute, nor could they, that the first requirement of the *Grubart* test is satisfied in this case. Plaintiffs allege that Ms. Olivelli was injured while SCUBA diving off the coast of Puerto Rico. Thus the location requirement of the *Grubart* test is satisfied. The more difficult issue is whether or not Plaintiffs have demonstrated that "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart,* 513 U.S. at 539, 115 S.Ct. 1043.

The case at bar is factually similar to the Eleventh Circuit Court of Appeals case of *Shultz v. Florida Keys Dive Center, Inc.,* 224 F.3d 1269 (11th Cir.2000). In *Shultz,* plaintiff sued the dive center and its employees for the wrongful death of his wife, who died of an apparent drowning while scuba diving on a trip conducted by the dive center. Before taking the trip, the decedent signed a document releasing the defendants from liability for all claims, even those claims alleging negligence and gross negligence. During the dive, the decedent and her husband surfaced far from the dive boat, and signaled for assistance. The boat was unable to move because it was waiting for other divers, so the dive master swam to assist the couple. By the time the dive master arrived, the decedent had become unconscious, and eventually died. *Id.* at 1270.

Plaintiff sued the dive center and its employees in district court, invoking the court's diversity jurisdiction. Plaintiff claimed that defendants had been negligent in: (1) a failure to warn on the strength of the current, (2) not immediately sending the boat to retrieve the decedent, (3) not properly outfitting the boat with a small boat for emergency situations, (4) not bringing the proper rescue devices, and (5) not being attentive to decedent's condition in the water. *Id.* The district court, applying admiralty law, granted summary judgment in favor of defendants by finding that: (1) the waiver of liability was a valid release, under Florida law, of plaintiff's claims, and (2) the release was

not invalid under the admiralty statute, 46 App.U.S.C. § 183c(a). *Id.*

The court of appeals began its analysis by determining whether admiralty or substantive Florida law applied to the case. The court noted that the trial court had held that there was admiralty jurisdiction because "by transporting individual scuba divers for shore to dive off of a dive vessel, the Defendants were performing an activity traditionally performed by vessels." *Id.* at 1272. The court of appeals, stated that they saw no reason to disturb the district court's finding, but noted that the precise issue was not free from doubt. The court then began analyzing the various cases dealing with scuba accidents, and whether or not admiralty jurisdiction lies. *Id.*

The court began its jurisdictional analysis, by citing three cases involving scuba diving accidents where no admiralty jurisdiction was found. The reasoning underlying the denial of admiralty jurisdiction, in each of the cases, was the that the factual allegations concerned only the scuba activity, and did not concern the vessel or crew. The first case summarized by the *Shultz* court was a state court case from Florida, *Borden v. Phillips,* 752 So.2d 69 (Fla. 1st DCA 2000). In *Borden,* the court held that admiralty jurisdiction did not lie because the activity at issue was scuba diving, and that plaintiffs' claims did not have anything to do with the operation or maintenance of the dive boat. *Id.* at 72–73. The *Shultz* court next cited two district court cases from Hawaii, *In re Kanoa, Inc.,* 872 F.Supp. 740 (D.Haw.1994) and *Tancredi v. Dive Makai Charters,* 823 F.Supp. 778 (D.Haw.1993), neither of which contained allegations pertaining to the vessel used to transport the divers. However, the holdings in the Hawaii cases are called into doubt by the Supreme Court's *Grubart* decision because the multi-factored admiralty jurisdiction analysis used in *Kanoa* and *Tancredi* was rejected. *See McClenahan v. Paradise Cruises, Ltd.,* 888 F.Supp. 120, 121–23 (D.Haw.1995).

The court next discussed a line of cases where admiralty jurisdiction was recognized because of the role of the boat or vessel in causing the injuries. The first case cited was *Neely v. Club Med Management Servs., Inc.,* 63 F.3d 166, 179–80 (3d Cir.1995). In *Neely,* the plaintiff, who was employed as a scuba instructor, was injured when she was sucked into the running propellers of the dive boat. Similarly, in the case of *Courtney v. Pacific Adventures, Inc.* 5 F.Supp.2d 874, 877–78 (D.Haw.1998) the court found admiralty jurisdiction where a scuba diver's leg became entangled with the propeller of a snorkeling tour boat that was passing through the dive area.

Finally, the *Shultz* court discussed a line of cases where scuba divers allege negligence during the dive and after the diver comes aboard the vessel. The first case falling into this category is *McClenahan* 888 F.Supp. at 121–23. In *McClenahan* the court held that "even if scuba diving by itself is not related to a traditional maritime activity as suggested by *Tancredi* and *Kanoa,* here there were allegations of negligence on the part of the vessel and of Paradise Cruises, Inc. (claims which surely have substantial relationships with traditional maritime activity)." Therefore, admiralty jurisdiction applied.

Next, the court cited *Sinclair v. Soniform,* 935 F.2d 599, 600–02 (3d Cir.1991). In *Sinclair,* plaintiff was transported by boat to the dive site. Upon arrival, plaintiff dove and remained below the surface for about twenty-seven minutes. While surfacing, plaintiff experienced problems with his equipment, and required assistance re-boarding the vessel. Once aboard, plaintiff began suffering from the symptoms of decompression sickness.

However, the crew failed to administer medical care, and continued with the dive for another two and one-half hours. Plaintiff alleged that the crew was negligent in that they failed to detect his symptoms and administer the proper medical care. *Id.* The district court dismissed plaintiff's claims by finding that admiralty jurisdiction did not lie. The circuit court reversed, and held that admiralty jurisdiction existed because the dive boat crew failed to render medical assistance to a diver after re-boarding the boat. *Id.* at 600–02.

■ Turning to the case at bar, the Court should determine whether the facts as alleged by Plaintiffs fit the category of cases where: (1) only allegations of negligence concerning the scuba dive are presented; (2) only allegations of negligence concerning the operation of a vessel are presented; or (3) allegations of negligence regarding the dive and the operation or maintenance of a vessel. This is not a difficult task. Here, Plaintiffs have alleged that Defendant Chuck Rew failed to adequately plan and supervise the final dive, that Defendants failed to provide the necessary medical care, and that the vessel transporting them to shore after the accident was not adequately functioning.

We find, as the court in *Shultz* concluded, in accordance with the first prong of the *Grubart* nexus test, "by transporting divers from shore to dive off a vessel, the Defendants were performing [at least in part] an activity traditionally performed by vessels." 224 F.3d at 1272. Moreover, in accordance with the second prong of the *Grubart* nexus test, the Court finds that a significant potential impact on maritime commerce exists here, because of the distinct possibility that another vessel would have to be diverted to assist the negligent crew, where untrained divers were not supervised properly, and there are allegations that the boat was not adequately equipped or maintained and the crew was not properly trained. Thus, we find that admiralty jurisdiction exists under 28 U.S.C. § 1333.

The next step in our analysis is to determine the significance of our ruling that the law of admiralty applies. We begin by looking once again to the factual allegations made by Plaintiffs, mainly the nature of the claim and the location of the diving accident. Regarding the nature of Plaintiffs' claim, they state that "this is an action for wrongful death damages." (Docket # 34). Moreover, Plaintiffs allege, and Defendants do not dispute, that the injury occurred approximately one to one and one-half miles off of the southeast coast of Puerto Rico. These facts, although not the focus of either party's brief, are critical to the type of recovery potentially available.

We now turn our focus to the available theories of recovery for personal injury or death in admiralty cases. First, is an action under the Jones Act, 46 U.S.C.App. § 688, *et seq.* The Jones Act "provides a negligence cause of action and tort damages to a seaman injured or killed in the course of their employment, whether on the high seas or in territorial waters. An employer/employee relationship is a necessary antecedent to a Jones Act negligence claim." *In re Goose Creek Trawlers, Inc.*, 972 F.Supp. 946, 948 (E.D.N.C.1997). Since Ms. Olivelli was neither a seaman nor an employee of Defendants, the Jones Act is inapplicable here. The second type of action for injury or wrongful death in admiralty is the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901.[2] Under this Act, "longshoremen and other maritime workers [have the] right to bring an action under the general

2. Issues concerning the applicability of maritime law to Puerto Rico are of interest to this

maritime law for injuries caused by the negligence of others." *Id.* at 948. Clearly, this statute is inapplicable here. A third type of action for admiralty wrongful death claims is the Death on the High Seas Act, 46 U.S.C.App. § 761. This Act covers "the death of any person, seaman or non-seaman, when such death is caused by a wrongful act, neglect or default occurring on the high seas" (defined as one marine league, or approximately three miles, from shore). *Id.* (internal citations omitted). Likewise, this statutory scheme is unavailable to Plaintiffs because they allege that the accident occurred within three miles of the coast of Puerto Rico.

The fourth remedy available for admiralty claims is a creature of common law. In the case of *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), the Court recognized "that a remedy exists for wrongful death under general maritime law." *Id.* at 949. Although the *Moragne* case dealt with a wrongful death action based on a seaworthiness theory, subsequent caselaw *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996) and *Garris v. Norfolk Shipbuilding & Drydock Corp. E.T.*, 210 F.3d 209 (4th Cir.2000) has been interpreted to provide a cause of action under general maritime law for wrongful death based on allegations of negligence. It is this common law theory that Plaintiffs invoke for Ms. Olivelli's alleged wrongful death.

■ With our jurisdictional analysis complete we now turn to Plaintiffs' arguments regarding the application of the pre-accident waiver, which include: (1) that the waiver did not sufficiently explain the dangers associated with scuba diving, (2) that the waiver violates public policy, (3) that the waiver was an adhesion contract, and (4) that the waiver did not cover Defendants' gross negligence. In assessing the validity of a waiver, courts almost universally consider the following: (1) whether the person signing the waiver had informed consent; (2) whether the clause was inconsistent with public policy; and (3) whether the clause constitutes an invalid adhesion contract. *See* Phyllis G. Coleman, *Scuba Diving Injuries: Causes, Remedies, and Defenses*, 29 J. Mar. L. & Com. 519 (1988).[3] We will now turn our attention to the validity of the waiver.

■ Since the language of the waiver will be critical to our analysis, we include the waiver in its entirety.

**LIABILITY RELEASE AND EXPRESS ASSUMPTION OF RISK**

Please read carefully, fill in all blanks and initial each paragraph before signing.

Court. For discussions concerning the interaction of Puerto Rico and federal maritime law *see*, Casellas, *Federal and Commonwealth Jurisdiction in the Field of Maritime Law*, 26 Rev. Col. Abog. P.R. 259 (1966); Casellas, *The Admiralty Jurisdiction in Puerto Rico*, 22 Rev. Col. Abog. P.R. 165 (1962); *see also* Ydrach, *Court Decisions Regarding Maritime Law in Puerto Rico*, 26 Rev. Col. Abog. P.R.1966; Gelpi, *Maritime Law in Puerto Rico: An Anomaly in a Sea of Federal Uniformity*, 26 Rev. Der. P.R. 251 (1992); Gelpi, *The Maritime Law of Puerto Rico*, 28 J. Mar. L. & Com. 647 (1997).

3. We note that a dispute exists among the parties on whether the Court should apply Puerto Rico or federal common waiver law. However, we find that this issue is inconsequential as Puerto Rico waiver law tests the same basic principles as those cited above, to wit: (1) whether the parties intent was clear; and (2) whether the waiver is contrary to the law, the public interest, or the public order, or prejudicial to the interests of a third person. The court's underlying task in waiver cases is to determine whether the waiver is clear, conclusive, and unequivocal. *See Chico v. Editorial Ponce, Inc.*, 101 D.P.R. 759, 778 (1973); *Cabrera v. Doval*, 76 P.R.R. 728, 731 (1954).

I, [signed] Mr. and Mrs. Olivelli, hereby affirm that I have been advised and thoroughly informed of the inherent hazards of skin diving and scuba diving.

[checked] Further, I understand that diving with compressed air involves certain inherent risks; decompression sickness, embolism, or other hyperbaric injuries can occur that require treatment in a recompression chamber. I further understand that the open-water diving trips, which are necessary for training and for certification, may be conducted at a site that is remote, either by time or distance or both, from such a recompression chamber. I still choose to proceed with such instructional dives in spite of the possible absence of a recompression chamber in proximity to the dive site.

[checked] I understand and agree that neither my instructor [signed] Chuck Rew, the facility through which I received my instruction [signed] Dive Copamarina, nor any of their respective employees, officers, agents or assigns, (hereinafter referred to as "Released Parties") may be held liable or responsible in any way for any injury, death, or other damages to me or my family, heirs, or assigns that may occur as a result of my participation in this diving class or as a result of the negligence of any party, including the Released Parties, whether passive or active.

[checked] In consideration of being allowed to enroll in this course, I hereby personally assume all risks in connection with said course, for any harm, injury or damage that may befall me while I am enrolled as a student of this course, including all risks connected therewith, whether foreseen or unforeseen.

[checked] I further save and hold harmless said course and Released Parties from any claim or lawsuit by me, my family, estate, heirs, or assigns, arising out of my enrollment and participation in this course including both claims arising during the course or after I receive my certification.

[checked] I also understand that skin diving and scuba diving are physically strenuous activities and that I will be exerting myself during this diving course, and that if I am injured as a result of a heart attack, panic, hyperventilation, etc., that I expressly assume the risk of said injuries and that I will not hold the above listed individuals or companies responsible for the same.

[checked] I further state that I am of lawful age and legally competent to sign this liability release, or that I have acquired the written consent of my parent or guardian.

[checked] I understand that the terms herein are contractual and not a mere recital, and that I have signed this document of my own free act.

IT IS THE INTENTION OF [SIGNED] MRS. AND MR. OLIVELLI BY THIS INSTRUMENT TO EXEMPT AND RELEASE MY INSTRUCTORS [SIGNED] CHUCK REW, THE FACILITY THROUGH WHICH I RECEIVED MY INSTRUCTION [SIGNED] DIVE COPAMARINA, AND INTERNATIONAL PADI, INC. AND ALL RELATED ENTITIES AS DEFINED ABOVE FROM ALL LIABILITY OR RESPONSIBILITY WHATSOEVER FOR PERSONAL INJURY, PROPERTY DAMAGE OR WRONGFUL DEATH HOWEVER CAUSED, INCLUDING, BUT NOT LIMITED TO, THE NEGLIGENCE OF THE RELEASED PARTIES, WHETHER PASSIVE OR ACTIVE.

I HAVE FULLY INFORMED MYSELF OF THE CONTENTS OF THIS LIABILITY RELEASE AND EXPRESS ASSUMPTION OF RISK BY READING IT BEFORE I SIGNED IT ON BEHALF OF MYSELF AND MY HEIRS.

[signed] Mary Olivelli [dated] 10–20–97
[signed] Paul Olivelli

(Docket # 32, ex. 2).

Plaintiffs' first argument against the application of the waiver is that it was not clear and it failed to explain the specific dangers encountered by Ms. Olivelli. The crux of Plaintiffs' argument is that the release failed to warn of the dangers encountered once she boarded the boat. These dangers included allegations that the boat was improperly equipped and maintained, and that the crew was not trained to provide adequate first-aid. The

Court does not agree with Plaintiffs' argument regarding the specificity of the waiver language.

First, the Court agrees with Defendant that the language of the waiver is clear, concise, and unequivocal. In fact, we find that it would be difficult to imagine language more clearly drafted so as to put a person on notice of its legal significance and effect. Importantly, the waiver includes a specific recitation of the types of risks associated with diving while using compressed air. Those risks include, *inter alia,* decompression sickness and **embolism**, and the evidence demonstrates that Ms. Olivelli died of an air embolism. Moreover, we agree with Defendant that "... for a release to be effective, it is not necessary [nor is it possible] to list each possible class of releasor or each possible manner in which releasor could be injured during an inherently dangerous event. The possibilities are endless ...." *DeBoer v. Florida Offroaders Driver's Association, Inc.,* 622 So.2d 1134, 1136 (Fla. 5th DCA 1993). A most eloquent summary of this reasoning was set forth in the case of *National and International Brotherhood of Street Racers, Inc. v. Superior Court,* 215 Cal.App.3d 934, 264 Cal.Rptr. 44, 46–47 (1989):

> [d]rafters of releases always face the problem of steering between the Scylla of simplicity and the Charybdis of completeness. Apparently no release is immune from attack. If short and to the point, a release will be challenged as failing to mention the particular risk which caused a plaintiff's injury or as insufficiently comprehensive. It will be attacked as totally ineffective if a key word is placed in the caption for emphasis but not repeated in the text, or if, despite unambiguous language, the word "negligence" is not used. If the drafter avoids these shortcomings by adding details and illustrations, the plaintiff invokes the doctrine *expressio unius exclusio alterius est* and characterizes the causative hazard as one not found among those listed in the release, but if the list ends with an inclusive term—"and all other risks not specifically enumerated"—it will be argued, under the principle ejusdem generis, that the risk encountered is nonetheless not assumed, because its nature is different from those listed. If the drafter strives to be comprehensive, the release is attacked as unduly lengthy, but if he fits it onto a single page, the type size will be criticized as inadequate. If the significance of the release is emphasized by its repetition in two documents, any variation in wording fuels a challenge. In cases arising from hazardous recreational pursuits, to permit released claims to be brought to trial defeats the purpose for which releases are requested and given, regardless of which party ultimately wins the verdict. Defense costs are devastating. Unless courts are willing to dismiss such actions without trial, many popular and lawful recreational activities are destined for extinction. To be effective, a release need not achieve perfection; only on Draftsman's Olympus is it feasible to combine the elegance of a trust indenture with the brevity of a stop sign. "Whoever thinks a faultless piece to see, Thinks what ne'er was, nor is, nor e'er shall be." It suffices that a release be clear, unambiguous, and explicit, and that it express an agreement not to hold the released party liable for negligence.

The Court finds that under the agreement at issue here, Ms. Olivelli clearly accepted responsibility for the consequences and had the particular knowledge of the specific and precise risk (embolism) which caused her death. Thus, the Court will

not set the agreement aside on the basis of ambiguity.

Plaintiffs next argue that the waiver is invalid because it violates public policy. Specifically, Plaintiffs argue that the application of a pre-accident release in this case would be inconsistent with the public policy served by the application of general maritime law. The Court construes this argument as a reference to 46 U.S.C.App. § 183c(a), which states that:

> [i]t shall be unlawful for the manager, agent, master, or owner of any vessel transporting passengers between ports of the United States or between any such port and a foreign port to insert in any rule, regulation, contract, or agreement any provision or limitation (1) purporting, in the event of loss of life or bodily injury arising from the negligence or fault of such owner or his servants, to relieve such owner, master, or agent from liability, or from liability beyond any stipulated amount, for such loss or injury, or (2) purporting in such event to lessen, weaken, or avoid the right of any claimant to a trial by court of competent jurisdiction on the question of liability for such loss or injury, or the measure or damages therefor. All such provisions or limitations contained in any such rule, regulation, contract, or agreement are declared to be against public policy and shall be null and void and of no effect.

However, as Plaintiffs concede, the *Shultz* court faced an identical argument and held that the statutory language did not invalidate the SCUBA release because, (1) the dive boat was not a vessel transporting passengers between ports of the United States, and (2) the vessel could not be categorized as a common carrier to which section 183c applied. 224 F.3d at 1271; *see also Waggoner v. Nags Head Water Sports Inc.,* 141 F.3d 1162, 1998 WL 163811 (4th Cir.1998). The Court agrees with the circuits' holdings. Moreover, the Court finds Plaintiffs' reliance on *Cates v. United States,* 451 F.2d 411 (5th Cir.1971) misplaced. In *Cates,* the court was concerned with the scope of a "seaman's release." The court noted that seaman's releases must be given strict judicial scrutiny because seamen have traditionally been viewed as the wards of Admiralty. This status as a ward of the court, requiring judicial scrutiny does not apply to Ms. Olivelli, as a college-educated teacher.

Plaintiffs' third argument against the application of the waiver is that the waiver constitutes a contract of adhesion. First, the Court finds nothing inherently unfair in the mandatory use of waivers in recreational sporting events such as scuba diving. Moreover, the activity at question, scuba diving, is a strictly voluntary recreational pursuit, and does not constitute the rendition of essential services such as medical care or public transportation, where the courts would be more likely to find that a contract of adhesion exists. Finally, Plaintiffs' argument about the inequitable bargaining positions is not persuasive. As we mentioned earlier, Ms. Olivelli was a college-educated school teacher. She read and initialed every clause of the waiver, and was free to decline Defendants' services if she did not wish to assent to the terms of the waiver. *See Cutchin v. Habitat Curacao–Maduro Dive Fanta–Seas, Inc.,* 1999 A.M.C. 1377 (S.D.Fla.1999); *Baschuk v. Diver's Way Scuba, Inc.,* 209 A.D.2d 369, 618 N.Y.S.2d 428 (1988).

Plaintiffs' final argument is that the pre-accident release did not release Defendants from liability for gross negligence.[4]

4. Plaintiffs could have arguably used the First Circuit Court of Appeals case of *La Esperanza de P.R., Inc. v. Perez y Cia de Puerto Rico, Inc.,* to bolster their position. 124 F.3d 10 (1st

We begin by noting that Plaintiffs' first reference to gross negligence is in the opposition to Defendants' motion for summary judgment. Neither Plaintiffs' first complaint, or their first amending petition, raised a charge or allegation of gross negligence. Moreover, even viewing the instant facts in a light most favorable to Plaintiffs, there is only a charge of simple negligence. Plaintiffs have alleged no facts or produced no evidence to establish a higher degree of culpability approaching willful or wanton misconduct on the Defendants' part. The only evidence that Plaintiffs could rely on is their own self-serving characterization of the record evidence, and therefore, any discussion of the effect of gross negligence on the enforceability of the release is irrelevant.

## Conclusion

For the reasons set forth above, Defendants' motion for summary judgment (Docket # 32) is **GRANTED**, and this case will be **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**

Cir.1997). There, plaintiff shipowner argued that the defendant shipyard's actions amounted to gross negligence, not ordinary negligence, thereby vitiating the waiver of liability clause in the contract. The court held that no gross negligence existed on those facts, but, in dicta, indicated that parties may not absolve themselves from all liability by using such "red letter clauses." We do not believe that the holding there is dispositive here for two reasons. First, the language is dicta, and not part of the court's holding. Second, concerning the merits, we read the Esperanza decision as pertaining to such waiver clauses in marine contracts. Marine contracts are generally defined in the Schoenbaum Admiralty treaty as contracts where "the subject matter of the contract must be directly and intimately related to the operation of a vessel and navigation; it is not enough that the contract relate in some preliminary manner to maritime affairs." Schoenbaum, *Admiralty and Maritime Law*, § 3–10 (3d ed.2001). Thus, although we find that we have admiralty jurisdiction, the contract or waiver between the parties, which relates to scuba instruction and supervision, is not an admiralty contract; and therefore, we do not think that the *Esperanza* holding is controlling here.