William F. MURLEY, as Executor/Administrator of the ESTATE OF Christopher B. MURLEY, deceased, William Murley, individually, Mary Katherine Murley and Marybeth Byrne, Plaintiffs,

v.

DEEP EXPLORERS, INC., Daniel R. Crowell, Jennifer Samulski, Cincinnati Diving Center, Joseph P. Jackson, Jr., Steven Bernstein, and Technical Diving International, Defendants.

No. CV 01–4497(ADS)(ARL).

United States District Court, E.D. New York.

Aug. 27, 2003.

Fox & Lefkowitz, LLP by Ernest L. Fox, Esq., Of Counsel, Garden City, NY, for the Plaintiffs.

Lesser & Associates by Richard A. Lesser, Esq., Of Counsel, Pearl Street Redondo Beach, CA, for the Defendants Deep Explorers, Inc., Daniel R. Crowell, and Jennifer Samulski.

Law Office of William J. Turbeville, II, Delray Beach, FL, for the Defendants Cincinnati Diving Center, Joseph P. Jackson, Jr., Steven Bernstein, and Technical Diving International.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case involves the relatively new and dangerous sport of scuba diving/wreck examination and arises out of a tragic scuba diving accident in which Christopher B. Murley ("Murley") lost his life. Presently before the Court is a motion for summary judgment by the defendants Cincinnati Diving Center ("CDC"), Joseph P. Jackson, Jr. ("Jackson"), Steven Bernstein ("Bernstein"), and Technical Diving International ("TDI"). Joining in the motion for summary judgment are defendants Deep Explorers, Inc., Daniel R. Crowell ("Crowell"), and Jennifer Samulski ("Samulski") (collectively, the "defendants").

## I. BACKGROUND

The following pertinent facts are undisputed unless otherwise indicated. The events alleged in this action took place off the coast of Montauk, New York on July 21, 1999. On that day, Murley died on the surface of the ocean waters during a highly advanced scuba diving excursion. Murley booked the expedition through CDC and received training and certifications from Jackson and TDI. Murley was transported to the dive site aboard the *Seeker*, which was owned and operated by Deep Explorers, Inc.

Murley suffered from hypertention and was a very large man, standing approximately 6′6″ tall and weighing approximately 350 pounds. On February 14, 1998, Murley attended his first scuba diving training class at CDC. The class was taught by Jackson and consisted of ten course "modules" over a period of approximately seven days. On March 22, 1998, after the completion of this program, Murley was issued a basic certification as an "open water" diver. Thereafter, Murley received a series of scuba training and certifications including, (1) PADI Open Water Certification; (2) PADI Advanced Open Water; (3) PADI Deep Diver; (4) TDI Nitrox; (5) NSS CDS Cavern Diver; (6) NSS CDS Intro to Cave Diving; (7) TDI Decompression Procedures; and (8) TDI Extended Range and Trimix. The training and certifications were primarily from CDC under the supervision of Jackson and TDI, a scuba diving certification agency.

Also, on or about July 1998, Murley registered for an advanced scuba diving training course known as the Advanced Trimix. According to the plaintiffs, Murley did not meet the minimum requirements of training, experience, and physical stamina for this course. The plaintiffs further claim that Murley's actual dive experience was being rapidly outpaced by the classroom training and certification credentials being issued by the defendants.

According to the defendants, Murley conducted approximately forty training dives at the Gilboa Quarry in Ohio as part of his technical diving training, which was apart from his initial recreational diving training. He also performed three deep technical dives in the ocean off Pompano Beach, Florida for his Advanced Trimix course. Murley completed a number of confined water practice sessions and various tests and quizzes as part of his ongoing technical diving training.

As part of the registration process for the Advanced Trimix course, Murley signed three liability release and express assumption of risk agreements. The defendants assert that these releases were executed specifically for a trip to the shipwreck of the Italian ocean liner *Andrea Doria*, which is located approximately 100 miles to the east of Montauk, New York and lies below 240 feet of water. The first release was for his TDI technical scuba diving certification and was entitled "GENERAL LIABILITY RELEASE AND EXPRESS ASSUMPTION OF LIABILITY" in large bold-printed letters across the top of the document. It was signed on April 18, 1999 and provides, in pertinent part, as follows:

I, *[Christopher Murley]*, hereby affirm that I have been advised and thoroughly informed of the inherent hazards of technical scuba diving activities.

Further, I understand that diving with compressed air, oxygen enriched air (ntrox), oxygen, or trimix supplied by standard open circuit scuba, semi-closed or fully closed circuit rebreathers involves certain inherent risks including, decompression sickness, embolisms, oxygen toxicity, inert gas marcosis, marine lief injuries, or other barotrauma/hyperbaric injuries can occur that require treatment in a recompression chamber. I further understand that open water diving trips, which are necessary for training and certification, may be conducted at a site that is remote, either by time, distance or both, from such a recompression chamber. I still choose to proceed with such instructional dives in spite of the possible absence of a recompression chamber in proximity to the dive site.

I understand and agree that neither by instructor(s) [Joe Jackson], the facility through which I received my instruction, [CDC], Technical Diving International, nor any of their respective employees, officers, agents, or assigns, nor the authors of any materials, including texts or tables expressly used for TDI training and certification, (herein referred to as "Released Parties") may be held liable or responsible in any way for any injury, death, or other damages to myself or my family, heirs, or assigns that may occur as a result of my participation in this diving class or as a result of the negligence of any party, including the Released Parties, whether passive or active.

In consideration of being allowed to enroll in this course, I hereby personally assume all risks in connection with said course, for any harm injury or damage that may befall me while I am enrolled as a student of this course, including all risks connected therewith, whether foreseen or unforeseen.

I further agree to save, defend, indemnify, and hold harmless said course and Released Parties from any claim or lawsuit by me, anyone purporting to act on my behalf, my family, estate, heirs or assigns, arising directly or indirectly out of my enrollment and participation in this course including both claims arising during the course or after I receive my certification even

if such claims may be groundless, false or fraudulent.

I also understand that technical diving activities are physically strenuous and that I will be exerting myself during this diving course, and that if I am injured as a result of heart attack, panic, hyperventilation, oxygen toxicity, inert gas narcosis, drowning, etc. that I expressly assume the risk of said injuries and that I will not hold the above listed individuals or companies responsible for the same, and I agree to defend, indemnify, and hold harmless said course and Released Parties for any such injuries occurred by me.

\* \* \* \* \* \*

I further state that I am already a qualified and certified scuba diver from the following training agencies: [PADI], and that I hold training to the level of [Advanced]. I am aware of the required certification level and/or experience necessary and recommended to enroll in this diving course and I stipulate I meet those requirement for prior certification. I have been a certified diver since [1998] and have been diving for [1½] years for a total of [130] dives to a maximum depth of [140] feet.

I understand that the terms are contractual and not a mere recital, and that I have signed this document of my own free act. Further that I understand and agree that, in the event that one or more of the provisions of this agreement, for any reasons, is held by a court of competent jurisdiction to be invalid or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this agreement shall be construed as if such invalid, illegal or unenforceable provision or provisions had never been contained herein.

It is my intention of [Christopher Murley] by this instrument to exempt and release my instructors [Joe Jackson], and others _____, the facility, through which I received my instruction [CDC], and Technical Diving International, and all other related entities and released parties as defined above, from all liability or responsibility whatsoever for personal injury, property damage, or wrongful death however caused, or arising out of, directly or indirectly, including, but not limited to, the negligence of the Released Parties, whether passive or active. I have fully informed myself of the contents of this liability release and express assumption of risk by reading it before signing it on behalf of myself and my heirs.

Murley initialed each paragraph acknowledging he had read it and signed on the signature line. In addition, he wrote that he had been a certified diver since 1998 and had been diving for 1½ years with a total of 130 dives to a maximum depth of 140 feet.

The second document Murley signed for this expedition was dated May 20, 1999 and entitled "Technical Deep Diving Registration." It states, in pertinent part:

Diving beyond the no-decompression limits and using mixed gases is not for every diver. You have requested to join this expedition and understand and accept all RISKS, HAZARDS, and RESPONSIBILITY of deep diving. Being a good diver is only a part of the dive. You must be mentally and physically prepared to make dives of this magnitude.

By signing this document, [Christopher Murley] hereby voluntarily releases, discharges, waives, and relinquishes Cincinnati Diving Center, Steven Bernstein, Joseph P. Jackson,

and all officers, agents, and employees of Cincinnati Diving Center from any and all actions or causes of action for personal injury, property damage, and/or wrongful death, or otherwise, occurring to him/herself arising as a result of engaging in the aforementioned activities incidental thereto, whenever, wherever, and however the same may occur.

By signing this document, *[Christopher Murley]* hereby agrees that under no circumstances will he, or his heirs, executors, administrators, or assigns prosecute any claim for personal injury, property damage, and/or wrongful death, or otherwise, against Cincinnati Diving Center, Steven Bernstein, Joseph P. Jackson, and/or any officers, agents, or employees of Cincinnati Diving Center for any of said causes of action.

The undersigned hereby assumes all risks arising out of or pertaining to his/her participation in the aforementioned activities, and enters into this Agreement with the express intention of exempting Cincinnati Diving Center, Steven Bernstein, Joseph P. Jackson, and/or any officers, agents, or employees of Cincinnati Diving Center from any and all liability for personal injury, personal damage, and/or wrongful death, or otherwise, caused by NEGLIGENCE or otherwise....

That same day, May 20, 1999, Murley executed a final comprehensive release directed to Deep Explorers, Inc., TDI, and the dive vessel *Seeker*, as well as its captain and crew, including defendants Crowell and Samulski. The document was entitled "DEEP EXPLORERS, INC. LIABILITY RELEASE" and contained similar language as the release signed on April 18, 1999. The third release, which was both notarized and signed by Murley, contains the following language:

Initial each number section to which you agree. Print the word "VOID" in the space provided for initials if you do not agree, or if the statement is inaccurate, untrue, or you do not understand the intent of the statement.

1. It is my intention by this instrument to give up my right to sue Deep Explorers, Inc. IANTD, TDI/SDI, and their officers, agents, servants, and/or employees, whether specifically named or not, and it is also my intention to exempt and relieve Deep Explorers, Inc. IANTD, TDI/SDI and their officers, agents, servants, and/or employees and to hold these entities harmless from any liability for personal injury, property damage, or wrongful death caused by negligence or gross negligence and I agree to assume all risk in connection with my scuba diving activities.

2. I am a certified diver and have been taught and understand that scuba diving has inherent risks and dangers associated therewith including, but not limited to, decompression sickness, embolism, equipment failure or malfunction, acts of fellow divers, depletion of the diver's breathing gas supply, becoming lost or disoriented at depth, becoming entangled or entrapped by objects on the sea floor or wreck, onset of sudden illness at depth, or other perils of the sea which could cause injury or drowning, and I SPECIFICALLY ASSUME SUCH RISKS. I also understand that breathing gases other than air, diving deeper than 130 feet, and conducting dives requiring mandatory decompression, only increase these inherent risks, and I have received training specifically to aid me in managing these increased risks.

3. Within the last year, I have conducted wreck dives well in excess of

130 feet and I am familiar with the extensive preparation necessary to conduct such dives and understand that I am solely responsible for such preparation. OR I am currently enrolled in a technical diving course and I will be making my certification dives on these trips under the supervision of my instructor.

4. I am physically fit for deep technical scuba diving and I will not hold any of the above named persons or entities responsible should I be injured as a result of heart problems, lung problems, or other illnesses or medical problems which might occur while diving, or aboard the diving boat.

* * * * * *

7. I will be present at and attentive to the safety briefing given by Deep Explorers, Inc., their officers, agents, servants, and/or employees, and if there is anything that I do not understand or am not in agreement with, I will notify Deep Explorers, Inc., and the boat Captain immediately.

* * * * * *

9. I understand that I have a duty to plan and carry out my own dive and to be responsible for my own safety and should I elect to dive with a buddy, it is to be an arrangement solely between that buddy and myself. Deep Explorers, Inc., IANTD, TDI/SDI, and their officers, agents, servants, and/or employees are not responsible for providing me with a diving partner or in any way coordination my dive with another diver.

10. I fully understand and am fully aware that the dive boat is extremely limited in its rescue and emergency medical response capabilities and that the dive site is in a remote location. As a result, in the event of illness or injury, rescue and/or appropriate med-ical assistance may be significantly delayed and I could sustain further serious injury, possibly resulting in death, from this delay.

11. I fully understand that it is my responsibility to make my family aware, as I am, that scuba diving, especially when conducted deeper than 130 feet, is an ultra-hazardous activity and to accurately portray to them the risk of my injury or death.

* * * * * * * *

13. I have been given an opportunity to review this document with both my family and legal counsel.

14. It is my intention that this document be admissible in any and all legal proceedings, or lawsuits, that might arise from my scuba diving activities.

15. I have read and understand the foregoing in its entirety. I agree to the terms and conditions of each of the initialed, numbered sections above on behalf of myself, my heirs, and my personal representative.

Murley initialed every paragraph, filled in his name, permanent address, and signed the release.

Before the trip to the *Andrea Doria*, Murley had completed all the course requirement for his TDI Decompression Procedures, Extended Range Diver, and Advanced Trimix Diver courses offered by CDC and taught by Jackson. This included both classroom work and all open water dives. However, the defendants contend that although Murley had written on the April 18, 1999 release that he had made a total of 130 dives to a maximum depth of 140 feet, Murley actually had fewer than 100 dives, which was TDI's minimum for enrollment in Advanced Trimix, and had been diving as deep as 206 feet at the time he signed the release agreement. As such, the defendants claim that Jackson did not

issue to Murley his advanced Trimix certification card before the *Andrea Doria* trip because he was concerned that Murley's enthusiasm and over-aggressiveness might outpace his abilities. At a deposition, Jackson stated that he believed that by not issuing Murley his certification card until after he successfully dived the exterior of the *Andrea Doria*, he would be able to give Murley more supervised experience on the wreck. Jackson further stated that while the dives to the *Andrea Doria* were planned to provide Murley with experience to receive the Advanced Trimix certification, he did not require Murley to perform mandatory deep diving skills as part of an in-water test for his certification. Jackson stated that his plan was to monitor Murley and see how he performed while demonstrating the deep diving techniques necessary for diving under conditions such as those presented at the wreck site of the *Andrea Doria*.

According to the plaintiffs, Murley had only a total of 70 logged dives to his credit and had been scuba diving for only thirteen months when he signed the April 18, 1999 release. The plaintiffs assert that the defendants knew or should have known that Murley lacked the experience to be enrolled in the advanced technical diving course. Furthermore, the plaintiffs state that although Jackson asserts that he did not issue to Murley an advanced Trimix certification card, Samulski testified at her deposition that she received a TDI Diver Registration Form, dated July 1, 1999, which stated as follows: I (Joe Jackson) certify that the above named students (Christopher B. Murley) have completed the TDI training course indicated (Advanced Trimix) and have reached the proficiency level required by TDI standards before issuing these certifications . . . .

On July 17, 1999, Murley joined a group of divers from CDC for two planned back-to-back trips to the *Andrea Doria* aboard the dive vessel *Seeker*. Due to poor weather, the *Seeker* went instead to the wreck of *U–835*, a German submarine sunk off Block Island, Rhode Island, in approximately 130 feet of water, where Murley made a single dive. Two days later, the *Seeker* left for a second trip to the *Andrea Doria* with a total of ten passengers and crew on board. On July 20, 1999, after descending only part of the way to the sunken shipwreck, Murley aborted his first attempted dive. Murley's dive log indicates that he aborted the dive because he thought he analyzed his breathing gases incorrectly and experienced a visual disturbance he described as a "blue haze."

On the morning of July 21, 1999, Murley successfully descended to the depth of 189 feet to the *Andrea Dorea*. That afternoon, Murley again entered the water and gave an "O.K." signal to Jackson, who then followed him into the water. Murley then swam to the bow of the *Seeker*, planning to descend along the anchor line at the front of the boat. While Murley was swimming on the surface of the bow, crewmembers aboard the boat observed Murley struggling in the water. Crewmembers entered the water to assist Murley. In a deposition, Jackson stated that he observed Murley vertical in the water and holding onto the anchor line and heard a crewmember state that Murley "said help." Jackson then grabbed the manifold of Murley's scuba tanks and asked him what was wrong. In response, Murley said "I'm drowning" and "help." Jackson told him that because his whole body was above the water from the mid-chest up, he could not be drowning. Furthermore, Murley had a buoyancy control device and an inflated dry suit preventing his head from going underwater. The plaintiffs dispute this by asserting that before Murley was assisted, he was observed with his face down in the water.

Jackson added air to Murley's dry suit and buoyancy compensating device and tried to get Murley to keep one of his scuba regulators in his mouth, which Murley refused to do. Jackson and another crewmember towed Murley on his back to the stern of the boat. As Murley was being towed to the stern, he become unresponsive. While Murley was still in the water, a crewmember began mouth-to-mouth resuscitation. When Murley was finally lifted on board, Jackson and other crewmembers performed CPR on him until a U.S. Coast Guard helicopter and rescue swimmer arrived approximately 45 minutes later. Murley was transported to a hospital in Cape Cod, Massachusetts, where he was ultimately pronounced dead. The medical examiner determined that the cause of death was drowning.

On July 5, 2001, the plaintiffs commenced this wrongful death action invoking federal admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333 and 46 U.S.C.App. § § 761–767 commonly known as Death on the High Seas Act ("DOHSA"), claiming that the Murley's death was caused by the defendants' negligent acts. In their answer, the defendants assert several affirmative defenses based on the liability releases.

Presently before the Court is the defendants' motion for summary judgment to dismiss the complaint on the ground that they are not responsible for Murley's death because he knowingly and voluntarily signed three liability releases barring the plaintiffs from bringing this lawsuit. In addition, the defendants argue that DOHSA limits the recoverable damages to a certain specified class and that because the only proper plaintiff is Murley's personal representative, plaintiffs William Murley, individually, Mary Katherine Murley, and Marybeth Byrne lack standing. The Court notes that the plaintiffs failed to file a Rule 56.1 counter-statement. Instead, in a cross motion for summary judgment, the plaintiffs argue that the liability releases are void under New York state law and that the defendants' affirmative defenses therefore should be dismissed.

## II. DISCUSSION

### A. Standard of Review

A motion for summary judgment under Fed.R.Civ.P. 56 should be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "When a movant demonstrates through competent evidence that no material facts are genuinely in dispute, the nonmovant 'must set forth specific facts showing that there is a genuine issue for trial.' " *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)). "The nonmovant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Id.* (internal quotations and citations omitted); *see Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998).

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vann v. City of New York,* 72 F.3d 1040, 1048–49 (2d Cir.1995). Disputed facts that are not

material to the issue at hand will not defeat summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of judgment." *Id.* If there is evidence in the record, including affidavits, exhibits, interrogatory answers, and depositions, as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Lane v. New York State Electric & Gas Corp.,* 18 F.3d 172, 176 (2d Cir.1994).

Notably, "the trial court's task at the summary judgment motion state of litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to decide them. Its duty, in short, is confined at this point to issuefinding, it does not extend to issue resolution." *Gallo v. Prudential Residential Servs. Ltd.,* 22 F.3d 1219, 1224 (2d Cir.1994); *see Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987) (holding that on a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried.").

## B. The Effect of the Releases

The parties agree that because the injury occurred 100 miles off the coast of Montauk, New York, DOHSA provides the exclusive remedy, which permits a wrongful death action for the death of any person, seaman or non-seaman, when such death is caused by a wrongful act, neglect or default occurring "on the high seas." 46 U.S.C.App. § 761. However, the plaintiffs argue that New York state law applies in determining the enforceability of the liability releases signed by Murley and that the liability releases are void under New York General Obligation Law ("N.Y.G.O.L.") § 5–326, which states, in part, that agreements exempting "pools,

gymnasiums, places of public amusement or recreation or similar establishments ... from liability for damages caused by or resulting from [sic] negligence ... shall be deemed void as against public policy and wholly unenforceable."

In support of their argument that New York state law applies in assessing the enforceability of the releases, the plaintiffs rely principally on *Shultz v. Florida Keys Dive Center, Inc.,* 224 F.3d 1269 (11th Cir.2000), which involved a wrongful death of a diver who died while scuba diving. In *Shultz,* the issue was whether a document releasing the defendants from liability for all claims, including claims of negligence and gross negligence, was enforceable. In finding that the release was valid, the district court applied Florida state law and determined, among other things, that "since no principle of federal law governs the validity of the liability releases ... state law applies, unless the application of state law would 'frustrate national interests in having uniformity in admiralty law.'" *Id.* at 1273 (quoting *Coastal Fuels Mktg., Inc. v. Florida Express Shipping Co.,* 207 F.3d 1247, 1251 (11th Cir.2000)).

◼ The Court finds that the instant case is distinguishable from *Shultz.* Unlike this case, *Shultz* was brought into federal court under diversity jurisdiction, and the district court therefore applied state substantive law. In the present case, the plaintiffs specifically assert in their complaint that this Court has jurisdiction based on federal admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333 and DOHSA. In maritime tort cases, "federal maritime law governs the substantive legal issues" and "exclusively sets substantive liability standards, superseding state substantive liability standards." *Cutchin v. Habitat,* No. 98 Civ. 1679, 1999 WL 33232277, at *2 (S.D.Fla. Feb. 8, 1999) (citations and quotations omitted). There-

fore, because the plaintiffs commenced this action pursuant to this court's admiralty jurisdiction, the Court finds that federal maritime law applies.

■ In determining whether a waiver or release associated with scuba diving is valid under federal law, courts generally consider the following: "(1) whether the person signing the waiver had informed consent; (2) whether the clause was inconsistent with public policy; and (3) whether the clause constitutes a valid adhesion contract." *Olivelli v. Sappo Corporation, Inc.*, 225 F.Supp.2d 109, 116 (D.P.R.2002) (citing Phyllis G. Coleman, Scuba Diving Injuries: Causes, Remedies, and Defenses, 29 J. Mar. L. & Com. 519 (1988)); *Cutchin*, 1999 WL 33232277, at *7 (S.D.Fla. Feb.8, 1999). A pre-accident waiver or release typically will absolve a defendant from liability if these three factors are shown. *Olivelli*, 225 F.Supp.2d at 116.

■ In this case, Murley clearly understood the dangers associated with scuba diving. He represented on the three releases that he was advised and thoroughly informed of the hazards of scuba diving and that he assumed all risk of harm, injury, or damage. Murley also, apparently, fully informed himself of the contents of the liability releases and express assumptions of risk. The fact that he had received extensive training in scuba diving and was aware of the dangers involved is not in dispute.

Although the defendants concede that Murley made less than 100 dives, Murley himself represented in the April 18, 1999 release that he had participated in over 100 dives. In the May 20, 1999 release, he represented that he was physically fit for deep technical scuba diving and that he understood that it was his responsibility to make his family aware that scuba diving is an ultra-hazardous activity. Furthermore, on the technical diving registration, dated May 20, 1999, Murley represented that he

assumed all risks arising from his scuba diving activities and that he was exempting the defendants from "any and all liability for personal injury, personal damage, and/or wrongful death, or otherwise, caused by NEGLIGENCE or otherwise...." At the bottom, Murley signed and dated each release.

In addition, the releases clearly expressed the defendants' intent to free themselves and their employees from liability arising from negligence, and the language contained in the releases unequivocally put a layperson on notice of their legal significance and effect. In any event, the Court finds that Murley had enough experience to understand the dangers of such an activity and clearly accepted the high risks involved in scuba diving. While Murley may have lacked the physical stamina and training for such an advanced dive, there is no showing that Murley signed all three releases unwittingly.

The Court also finds that the enforcement of these releases is not inconsistent with public policy. Significantly, courts have consistently enforced releases similar to the releases signed in the present case. *See, e.g., Olivelli*, 225 F.Supp.2d at 120; *Cutchin*, 1999 WL 33232277, at *7 (S.D.Fla. Feb.8, 1999); *Baschuk v. Diver's Way Scuba, Inc.*, 209 A.D.2d 369, 370, 618 N.Y.S.2d 428 (2d Dep't 1994);

■ Nor does the Court find that the releases constitute adhesion contracts. Courts have recognized that "there is nothing inherently unfair about the use of releases in sporting events such as scuba diving." *Olivelli*, 225 F.Supp.2d at 119. Furthermore, the plaintiffs have alleged no facts showing that there was an inequitable bargaining position. A dangerous activity such as scuba diving is a strictly voluntary pursuit, and Murley read and initialed every clause of the April 18, 1999 release and May 20, 1999 release. If he

did not agree to or understand any of the clauses, Murley was free to write "VOID" or decline the defendants' services.

Finally, the Court rejects the plaintiffs' attempt to void the releases on the ground that the releases were procured by fraud and that the defendants acted with gross negligence. At the outset, the Court notes that the claims for fraud and gross negligence were raised for the first time in their papers opposing the motion for summary judgment and were never set forth in their complaint. Also, it is undisputed that Murley was aware of the dangers associated with scuba diving and that he was competent to sign the releases. In two of the releases, Murley initialed each paragraph acknowledging that he had read every paragraph and that he thoroughly understood the ramifications of signing the releases.

Moreover, aside from conclusory allegations, there is no evidentiary support showing that Murley signed the releases under duress or that he was fraudulently induced to sign the three releases. On the contrary, it is undisputed that Murley, in his apparent enthusiasm to enter the dangerous sport of deep ocean wreck diving, eagerly entered into his training and signed the releases necessary for him to dive to the *Andrea Doria*. In addition, the plaintiffs have failed to produce any evidence that the defendants acted with gross negligence. Accordingly, the Court finds that the three releases clearly provided that Murley was releasing the defendants from liability for their own negligence and preclude the recovery of damages for wrongful death, as a matter of law.

■ The Court notes that even assuming that New York state law applied, which it does not, the releases would still be enforceable. N.Y.G.O.L. § 5–326 applies to the owner or operator of a "pool, gymnasium, place of amusement or recreation or similar establishment," and was enacted to protect people attending recreational facilities from owners seeking to "exonerate [themselves] from liability for [their] own negligence which may have caused or resulted in injury to unsuspecting users of the facility." *Blanc v. Windham Mountain Club, Inc.*, 115 Misc.2d 404, 412, 454 N.Y.S.2d 383 (Sup.Ct.N.Y.Co.1982). Although facilities used for recreational purposes are subject to the statute, facilities used for instructional purposes are not. *Bacchiocchi v. Ranch Parachute Club, Ltd.*, 273 A.D.2d 173, 175, 710 N.Y.S.2d 54 (1st Dept.2000).

It is undisputed that Deep Explorers, Inc. and CDC are businesses that fall into a category of businesses providing both recreational and instructional services. However, while the Court agrees with the plaintiffs that the excursion to the *Andrea Doria* had recreational aspects, the record shows that Murley, as a student in training, was at the site of the shipwreck primarily to practice his deep sea diving techniques under the close guidance and direction of his diving instructor Jackson so that he could obtain his Trimix Diver certification card. Therefore, because the defendants' purpose for the excursion with respect to Murley was instructional, N.Y.G.O.L. § 5–326 is inapplicable.

The Court further finds that under New York case law, the liability releases signed by Murley were written in clear and unequivocal language with the expressed intent of absolving the defendant from the consequences of all negligence. *See Scrivener v. Sky's The Limit, Inc.*, 68 F.Supp.2d 277, 280 (S.D.N.Y.1999) (holding an agreement releasing a skydiving company from liability was enforceable because the agreement expressed in unequivocal and clear terms the intention of the company and its instructors to be relieved from liability); *Lux v. Cox*, 32 F.Supp.2d 92, 100 (W.D.N.Y.1998) (holding that an exculpato-

 

ry agreement releasing a race car driving school from liability for negligence enforceable because the language clearly expressed the intent of the parties); *Watts v. Country Cycle Club, Inc.,* 237 A.D.2d 350, 655 N.Y.S.2d 422 (2d Dep't1997) (holding that the language of the release clearly expressed the intention of the parties to relieve the defendant of liability for injuries due to defendant's negligence); *Chieco v. Paramarketing, Inc.,* 228 A.D.2d 462, 643 N.Y.S.2d 668 (2d Dep't 1996) (holding the release and waiver for paragliding lesson to be valid despite plaintiff's allegation that he did not read or understand the document); *Baschuk v. Diver's Way Scuba, Inc.,* 209 A.D.2d 369, 370, 618 N.Y.S.2d 428 (2d Dep't 1994) (holding that a liability release signed by a student in a scuba diving course was enforceable because the release's clear and unequivocal language expressed the intent to relieve the school of all liability for personal injury).

Moreover, as previously stated, it is undisputed that Murley was aware of the dangers of scuba diving and fully assumed the risks. *See Goodlett v. Kalishek,* 223 F.3d 32, (2d Cir.2000) (holding that doctrine of primary assumption of the risk under New York law barred plaintiff's wrongful death claim because death occurred as a result of decedent's voluntary and knowing participation in airplane racing, a highly dangerous sport with certain known risks).

Accordingly, the defendants' motion for summary judgment dismissing the complaint is granted. Furthermore, because the motion for summary judgment is granted, the Court need not address whether DOHSA limits the recoverable damages to a certain specified class and whether plaintiffs William Murley, individually, Mary Katherine Murley, and Marybeth Byrne lack standing.

### III. CONCLUSIONS

Based on the foregoing, it is hereby

**ORDERED,** that the defendants' motion for summary judgment dismissing the complaint is **GRANTED;** and it is further

**ORDERED,** that the plaintiffs' cross motion for summary judgment is **DENIED;** and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.